[No. 2324]

F. DEAN BRADLEY, DOING BUSINESS UNDER THE NAME AND STYLE OF BRADLEY ENGINEERING COMPANY, APPELLANT, *v.* NEVADA–CALIFORNIA–OREGON RAILWAY (A CORPORATION), RESPONDENT.

[178 Pac. 906]

1. CORPORATIONS—OFFICERS—APPARENT AUTHORITY.
    Where an agent is clothed with a title implying general powers as vice-president, general manager, or superintendent of a corporation, the business public and courts may fairly presume he is what the corporation holds him out as being.

2. RAILROADS—CONTRACTS—VALIDITY—APPARENT AUTHORITY OF OFFICERS.
    Railroad's contract for construction of fences along right of way, entered into by its vice-president, was valid, though contract was unauthorized by board of directors, the vice-president, as the managing agent of railroad, having apparent authority to bind railroad, notwithstanding Rev. Laws, 3520 (Stats. 1865, p. 427), providing for management of railroad by board of directors.

3. DAMAGES—BREACH OF CONTRACT—PREVENTION OF PERFORMANCE.
    Where breach consists in preventing performance of contract without fault of other party, latter is entitled to compensation for what he has already expended toward performance, less materials in hand, and all profits that he would have realized by performing the whole contract.

4. CONTRACTS—BREACH.
    A party who commits the first breach of ,a contract cannot maintain an action against the other for a subsequent failure to perform.

5. CONTRACTS—FENCING CONTRACT—BREACH.
    Railroad, contracting for building specified length of fence on its right of way within specified time, by notifying contractor to discontinue work, preventing continued performance of contract, and leading contractor to disband crew, breached the contract, notwithstanding its direction to contractor to resume work four months later.

6. DAMAGES—PLEADING—BREACH OF FENCING CONTRACT—LOSS OF
PROFITS.
    In action against railroad for breach of fencing contract,
plaintiff *held* entitled, under allegation of general damages,
to recover loss of profits resulting from railroad's refusal to
permit him to complete performance.

APPEAL from Second Judicial District Court, Washoe
County; *Thomas F. Moran,* Judge.

Action by F. Dean Bradley, doing business under the
name and style of the Bradley Engineering Company,
against the Nevada-California-Oregon Railway.   From
judgment for defendant, and from order denying new
trial, plaintiff appeals.   **Reversed and remanded.**

*Hoyt, Gibbons, French & Springmeyer,* for Appellant:

Boards of directors always delegate the power to make
ordinary contracts to general managers or superinten-
dents, and such was the case with the respondent com-
pany.   Even if it be true that the contract was not
binding in the first instance because not made by the
board of directors, it is, nevertheless, enforceable because
respondent company accepted and retained the benefits
of the contract, recognized and acquiesced in its validity,
and impliedly ratified it.   After having gone so far, the
company is estopped to say that the contract was not
made by the board of directors.   As to ratification and
estoppel, there is no difference between the rights of a
railroad corporation, any other private corporation, and
an individual.   Marshall, Priv. Corp., secs. 714–716.

There was a breach of contract by respondent when
it notified appellant to cease work.   There being a breach
at that time, respondent could not later claim the con-
tract was still in force.   It is elementary law that as
soon as respondent committed a breach of contract by
stopping the fencing and declaring its intention not to
go on with the contract, the right of action accrued to
appellant.   9 Cyc. 698.   A cause of action for breach by
a railroad company of a contract for the construction
of a section of its road accrues immediately on the

breach, and suit may be brought at once, and witnesses may estimate the cost of labor and material at that date in determining the profits which the contractor would have made if the contract had been completed. Waco R. Co. v. Shirley, 45 Tex. 355.

It was the duty of the trial court to give judgment to plaintiff for the damages sustained. The profit lost to appellant by the refusal of the company to allow him to proceed with the work is a proper element of damages. "Profits" means the gain which the contractor would have made if he had been permitted to complete the work; that is, "profits" are the difference between the cost of doing the work and the price to be paid for it. Phila. R. Co. v. Howard, 14 L. Ed. 173; Waco R. Co. v. Shirley, supra; 13 Cyc. 159. The profits which the contractor would have realized by the completion of the contract are the measure of damages. Where a part of the work is completed, and it is shown that such part is of substantially the same character as the rest, the cost of the work completed is competent evidence to fix the profits which the contractor would have made on the rest of the work. Tenn. R. Co. v. Danforth, 112 Ala. 80; Danforth v. Tenn. R. Co., 99 Ala. 331; Smith v. O'Donnell, 8 Lea, 468; Morey v. King, 49 Vt. 304; O'Connor v. Smith, 84 Tex. 232; Porter v. Burkett, 65 Tex. 386; Hammond v. Beeson, 112 Mo. 190; Singer Mfg. Co. v. Potts, 61 N. W. 23.

*James Glynn,* for Respondent:

The contract claimed to have been breached is not that of the defendant company. Contracts with a railroad company can be made only by and with its board of directors. Rev. Laws, 3520; Temple v. Dodge, 32 S. W. 514. The directors cannot delegate their own discretion. Bliss v. Kaweah C. & I. Co., 65 Cal. 502. "Generally, one who makes a special contract with the manager of a corporation is bound to take notice of limitations upon his authority." Taylor, Priv. Corp.,

secs. 195, 253; Purdy, Priv. Corp., vol. 2, secs. 801, 860. "Where a statute requires corporate contracts to be executed in a certain way, a contract not so executed cannot be enforced." Cook on Corporations, vol. 2, pp. 1732, 1824.

When charter of corporation prescribes the mode of contracting, it must be strictly pursued. "Every person who enters into a contract with a corporation is bound at his peril to take notice of the legal limits of its capacity." Reese on Ultra Vires, secs. 53, 61, 69. Neither the general manager nor the superintendent had the right to enter into any contract without authority from the board of directors or ratification by said board.

The alleged contract was not in any manner ratified by respondent. Ratification must be express and with full knowledge of the transaction. Yellow Jacket S. M. Co. v. Stevenson, 5 Nev. 229. "Full or partial payment of a claim against a corporation on contract will not ratify a contract executed without authority." Clarke v. Lyon County, 7 Nev. 80; Hillyer v. Overman M. Co., 6 Nev. 51; Rankin v. New England and Nevada Silver M. Co., 4 Nev. 78; Billings v. Morrow, 7 Cal. 171.

The alleged contract was not breached by respondent. "It must appear in an action for a breach of a contract prior to the time stipulated for its performance that there has been a clear repudiation of the contract by the other party thereto, either by some act rendering performance impossible or by express declaration refusing to perform." Joyce on Damages, vol. 2, sec. 1275; Oliver v. Brady, 28 Am. & Eng. Ann. Cas. 376, 31 Atl. 727; 9 Cyc. 637; 6 R. C. L., sec. 311, p. 926.

Loss of profits are special damages and must be specially pleaded. Anderson, Law Dict. 307; Joyce on Damages, vol. 1, sec. 81; 13 Cyc. 179; 5 Ency. Pl. & Pr., 719, 741, 742. Recovery is allowed only where damages can be proved with some degree of certainty. They should be counted upon specially. Thompson on Negligence, vol. 6, sec. 7610; Moore v. Taylor, 42 Hun, 45; Singer Mfg. Co. v. Potts, 61 N. W. 23.

By the Court, SANDERS, J.:

This is an action against a railroad corporation organized under the general laws of the state to recover for the alleged breach of a written contract, whereby the plaintiff was employed by one T. F. Dunaway, the agent and vice-president of the defendant corporation, to build certain fences, sections, or portions of fence, along its right of way, as the defendant or its agents should designate, between Madeline and Cameron, Calif.; the fences in the aggregate to be not less than forty miles in length. It appears that the defendant's agents, before the commencement of the work, designated sixty miles of fences in length as that to be built in accordance with the terms and specifications of the contract. It is the contention of the plaintiff that while it was actively engaged in the construction of the fences, and had built approximately thirty miles thereof, defendant required and compelled plaintiff to discontinue the construction work, and failed, neglected, and refused to continue with the work for more than six months after the plaintiff had commenced work, this being the time stated in the contract for its completion, to the plaintiff's damage in the sum of $1,800.

The defense to the action rests upon two grounds: First, that Dunaway, neither as agent nor as vice-president of the defendant, nor otherwise, had any power or authority to make and enter into the alleged contract; that the contract was made and entered into without the knowledge, authority, or consent of the defendant's board of directors; was never in any manner ratified or adopted by said board, and that the contract was null and void as to the defendant; and, second, that the plaintiff breached the contract, and was fully paid by defendant for all work or labor performed under the contract, and sustained no damage whatsoever.

The case was tried by the court without a jury. The court made findings of fact and conclusions of law, and upon these judgment was entered for the defendant. The plaintiff appeals from the judgment, as well as

from the order of the court denying the plaintiff a new trial.

The proof tends to show that Dunaway, agent and vice-president of the defendant, and Cox, its general manager, who succeeded Dunaway as agent, directed plaintiff in the performance of the contract. There was, however, no evidence of Dunaway's authority to make the contract, or that of Cox to ratify it, except such as the title to their offices implies. The district court decided, and in effect found, that under section 3520 of the Revised Laws (Stats. 1865, p. 427) the contract in question was not such as could be made by the defendant's employees, and that to be binding upon the defendant it should have been made and entered into by and with its board of directors or ratified by said board.

1, 2. While section 3520 commits the management of railroad corporations to a board of directors, and authorizes it to make and execute contracts to carry out the objects and purposes of the corporation, it also empowers its board to appoint officers and agents and to prescribe their duties. Where an agent is clothed with a title implying general powers, as vice-president, general manager, or superintendent, of a corporation, "the business public and courts may fairly presume he is what the corporation holds him out as being." An agent having the authority, and charged with the power to direct, has a general and discretionary power within the scope of his agency. This rule is settled. In Sacalaris v. E. & P. R. Co., 18 Nev. 155, 1 Pac. 835, 51 Am. Rep. 737, this court considered the reason and justice of the rule and its application to cases which we consider to be of the nature of that now in hand, and cited and reviewed many authorities in its support. Without repeating that discussion here, we content ourselves with a reference to the opinion in that case, and with the following statement of the rule from Elliott on Railroads (2d Ed.) sec. 213:

"As between the corporation and third persons, where the agent's power is not limited by the charter or by

positive law, the corporation will generally be held bound by his acts performed within the scope of his apparent authority; and this is true, not only of his contracts but of all his other acts and omissions."

Although railroad corporations are not required by statute to fence their property, it is not unfair to presume that a necessity existed for inclosing defendant's property at the points designated by its agents. In fact, from the testimony of its general manager, we are led to believe that an emergency existed for fencing at least a few miles of its road between the points designated, for the immediate protection of its property and that of the public. Upon whom, we may inquire, more than the managing agent of the company, would the duty of making a contract similar to the one in suit properly rest? It was doubtless this consideration that led the court in the Sacalaris case, supra, to the conclusion that the defendant's president and manager was the officer who, in the ordinary course of business, would be expected to employ the plaintiff, and that the plaintiff had the right to presume that the officer was so authorized (citing authorities).

As we reach the conclusion that the managing agents of the defendant acted within the scope of their apparent authority, and thus bound their principal, it is unnecessary for us to discuss the question as to the ratification by the defendant of the contract, or to cite authorities upon that point.

The trial court was also of the opinion that, conceding the contract in question to be in all respects regular and binding, the plaintiff failed to establish its breach, and also found that its failure to comply with the request of the defendant to build two miles of fence in December, 1914, as requested, constituted a breach of the contract. This question must be determined, not only by the terms of the contract itself, but from the subsequent acts and conduct of the parties; and we may also look to the circumstances of the case in order to see whether the plaintiff, after having partially performed the contract,

was relieved from future performance by the conduct of the defendant, and whether the plaintiff might accept it as a reason for not performing on its part. L. S. & M. R. Co. v. Richards, 152 Ill. 93, 38 N. E. 773, 30 L. R. A. 33.

The contract, among other things, provides:

"Material: The owner agrees to furnish, at its own expense, to the contractor, all the posts, wires, wire netting, staples and stays, and any other material that may be required in the construction of these fences; and it is agreed that said material shall be delivered by the owner and distributed along its track at the points needed for use in erecting said fences. * * *

"Time: The work shall be commenced as soon as possible after the delivery of the material, which the owner agrees to deliver as soon as the weather permits, and shall be completed in less than six months after it is begun.

"Delays: Should the contractor be delayed in the progress or completion of the work by any act or neglect of the owner, or by any damage caused by fires or floods, or any other cause for which the contractor is not responsible, then the time herein fixed for the completion of the work shall be extended for a period equivalent to the time lost in such delay."

The plaintiff commenced the construction of the fences on May 22, 1914, and actively continued construction until on or about August 14, 1914, when the general manager of the defendant wrote plaintiff as follows:

"Reno, Nevada, August 13, 1914.

"Gentlemen: This is to advise you that as soon as you finish building at Cameron that we will stop work of fence building for the present and will advise you when we are ready to commence work again.

"Yours truly, R. N. Cox, General Manager."

Upon receipt of this letter plaintiff disbanded its crew of twelve men, then engaged in the work, and brought its outfit to Reno, F. D. Bradley, now the sole owner of the plaintiff company (formerly a partnership), wrote

the manager that he considered it unfair to stop him at that time, when he had a crew organized, which he had been at considerable expense in organizing, and that he was ready and willing to carry out his part of the contract within six months. Bradley's testimony tends to show that he also notified the defendant "that he would hold it for damages in the amount that was coming for the uncompleted contract.'"

Nothing further was done by either of the parties with reference to the subject-matter of the contract until December 19, 1914, when Cox, the general manager, wrote plaintiff, stating that the defendant had been killing considerable stock just south of Horse Lake, and that it was anxious to have about two miles of fence built at that point, "and this is to ask you to commence work before January 5, 1915"; also stating that "this request is made by us per your contract with this company, dated December 1, 1913." Thereafter, on January 7, 1915, the manager gave written notice to plaintiff stating that, inasmuch as it had failed and neglected to comply with its request of December 19, 1914, the company "hereby declares the said contract terminated, canceled and at an end, and upon receipt of this notice you will cease all further work and operations under said contract." Thereafter, on August 3, 1915, the plaintiff commenced this action.

The contract is clearly an entire indivisible, executory agreement, whereby the contractor (plaintiff) obligated itself to build for the owner (defendant) a specified length of fence along its right of way, within a specified time, for so much per panel. The owner obligated itself to supply all materials necessary for the performance of the work. These were mutual interdependent covenants that go to the substance of the contract. The furnishing of the material was necessary to the performance of any work at all. It has been frequently decided that a contractor may treat the contract as rescinded where he has been prevented from completing it by reason of the default of the party to supply material

for the work as required by the contract. McConnell v. Corona City Water Co., 149 Cal. 60, 85 Pac. 929, 8 L. R. A. (N. S.) 1171. See authorities cited in note, Valente v. Weinberg, 13 L. R. A. (N. S.) 450.

3. If the breach consists in preventing the performance of the contract without fault of the other party, who is willing and able to perform, the damage of the latter consists in two distinct items, namely: First, what he has already expended toward performance (less materials in hand) ; and, second, the profits that he would realize by performing the whole contract. United States v. Behan, 110 U. S. 344, 4 Sup. Ct. 81, 28 L. Ed. 168; Masterton v. Brooklyn, 7 Hill (N. Y.) 69, 42 Am. Dec. 38. We are not here concerned with the first element of damage, as it affirmatively appears from the defendant's answer that the contractor was fully paid for the work it had performed; but these payments did not cover the second element of damage, to wit, the profits in the work which remained to be performed.

On August 13, 1913, the owner gave the contractor explicit directions to discontinue work, stating therein that it would be notified when to resume. There is nothing in the record to indicate that from that day to this the contractor received any notice to resume work, unless it be considered that the request in December to build two miles of fence, without any mention whatsoever as to the remainder, constitutes notice. The letter to discontinue the work certainly gave the contractor to understand that he need not resume work until notified so to do. He was at liberty to take the owner at its word, and to act accordingly. Baca v. Barrier, 2 N. M. 137. On receipt of the letter the contractor disbanded its crew then engaged in the work, and nearly four months elapsed before the contractor was notified as above stated. This letter, at the time it was written, may or may not have been intended as a rescission of the contract, but, when read in conjunction with the subsequent acts and conduct of the defendant, we are impressed that the contractor was justified in construing

it as an expression of the defendant's intent not to supply the materials, except at such times as its convenience might dictate, or at all.

But the district court was of the opinion that the clause in the contract respecting delays, when read in connection with the entire instrument, indicates that both parties contemplated that delays resulting from the act or neglect of the owner should be construed as extending the time for the performance, and not as a breach, of the contract. We do not subscribe to this view. Conceding that the contractor would be given the full six months to complete the contract if delayed by the acts or neglect of the owner, it does not follow that the owner was privileged to so act as to nullify the contract, destroy its mutual covenants, deprive the contractor of his interest in the value of the contract, and thus convert it into a continuing, severable agreement, whereby the owner could dictate to the contractor when to begin, when to cease work, and to build a section or portion of fence at such times as the owner should choose.

It would be absurd to contend as a principle of law that the owner, without the consent of the contractor, was at liberty to thus suit its own convenience as to the performance of the contract on its part, and keep the contractor with its crew and outfit waiting indefinitely for materials, and still hold him to his contract; and it would be unreasonable to hold that the contractor should keep itself in readiness at all times to build any particular portion of fence that the owner should designate, without reference to the remainder.

4, 5. If there is anything well settled, it is that the party who commits the first breach of the contract cannot maintain an action against the other for a subsequent failure to perform. Loudenback v. Tennessee Phosphate Co., 121 Fed. 298, 58 C. C. A. 220, 61 L. R. A. 407. The defendant has not kept its contract, and shows no excuse for its breach. It is therefore in no position to demand that the plaintiff should go on and

perform or answer for its refusal to recognize the contract as in force.

6. Entertaining these views as to the validity and breach of the contract, the next inquiry is: Did the court commit prejudicial error in permitting plaintiff to introduce evidence, over the objections of the defendant, tending to prove "loss of profits" as its sole damage? The complaint alleges general damages. It is the contention of the defendant that loss of profits is special damage, and under the rule must be specially pleaded. We do not question the rule, but doubt its application in a case like this. The amount which would have been received if the contract had been kept is the measure of damages if the contract is broken, and this means the value of the contract, including the profits and advantages which are its direct results and fruits. 8 R. C. L. 452. And in case of contracts like this the loss is, among other things, the difference between the cost of doing the work and the price to be paid for it. This difference, we apprehend from the evidence, was the inducement and real consideration which caused the contractor to enter into the contract, and to deprive him of it, when the owner put an end to the work without his fault, would be unjust. Hinckley Co. v. P. B. & S. Co., 121 U. S. 275, 7 Sup. Ct. 875, 30 L. Ed. 970.

Mr. Sutherland, in his work on Damages, vol. 1, 4th ed. sec. 66, says:

"Where a party has contracted to perform labor from which a profit is to spring as a direct result of the work done at a contract price, and is prevented from earning this profit by the wrongful act of another party, his loss is a direct and natural result which the law will presume to follow the breach of the contract; and he is entitled to recover it without special allegations in his declaration. This he will be entitled to establish by showing how much less than the contract price it will cost to do the work or perform the contract."

We do not wish to be understood as commending the complaint as a model pleading. It is subject to the

criticism of having been carelessly or hurriedly drafted. It might have properly contained a separate count as to loss of profits; yet, under the particular facts and circumstances, the defendant was not taken by surprise by the introduction of the testimony, and was not prejudiced.

Entertaining the views hereinabove expressed, the judgment in this case must be reversed, and the cause remanded.

It is so ordered.