PETE CLADIANOS, APPELLANT, *v.* GEORGE W. FRIEDHOFF, RESPONDENT

No 3664

January 31, 1952.                         240 P.2d 208.

*Sidney W. Robinson,* of Reno, for Appellant.

*John S. Halley,* of Reno, for Respondent.

42

## OPINION

By the Court, MERRILL, J.:

This is an action brought by the respondent, Friedhoff, as plaintiff asking damages for breach of contract. The contract involved was one for the performance of personal services by Friedhoff to appellant, Cladianos. The trial court, hearing the case without a jury, found for Friedhoff and granted judgment in the sum of $7,500 (plus the additional sum of $176.11 which is not in dispute). This appeal is from that judgment and from the court's subsequent order denying motion for new trial. The parties will be referred to by name.

The questions raised upon this appeal are whether, as contended by Cladianos, a tender of performance by Friedhoff was necessary under the circumstances; and whether the measure of damages should not be confined to quantum meruit for the services actually performed by Friedhoff.

Friedhoff is a duly licensed contractor engaged in business in the city of Reno. Cladianos is the owner and operator of El Rancho Motel in that city. On or about February 10, 1946, the parties entered into a contract whereby Cladianos employed Friedhoff to render services in a supervisory capacity for the construction of a 20-unit addition to the motel. Friedhoff was to be compensated in an amount equal to 10 percent of the total cost of construction.

Friedhoff entered into performance of the contract on or about April 1, 1946, laid out the work to be performed in accordance with architect's plans provided to him by Cladianos, engaged cement, carpentry, brick, plumbing, electrical and other subcontractors and entered into agreements with them as to the time of performance and their charges. Work proceeded in this manner from April 1, 1946, to May 15, 1946, under Friedhoff's supervision.

On the last-mentioned date the parties were notified by the Civilian Production Administration, a federal

agency, that the construction was in violation of orders of that agency and must be discontinued. Pursuant to that notice, construction was discontinued on that date.

On August 10, 1946, Cladianos notified Friedhoff that authority had been received from the agency to proceed with construction. Construction thereupon continued under Friedhoff's supervision until February 4, 1947, at which time Cladianos notified Friedhoff that he had again been ordered to discontinue construction.

Effective July 1, 1947, the Civilian Production Administration was abolished and all controls on construction were lifted. On July 10, 1947, Cladianos proceeded with construction of the motel addition. He did not notify Friedhoff of his action in this regard, however, and from that date until completion of the structure, work continued without Friedhoff's supervisory services. The total cost of the construction as finally completed was $78,433.60.

While Friedhoff was not notified that construction was recommencing on July 10, 1947, he subsequently learned of that fact by personal observation in driving past the site of construction and from conversations had with certain subcontractors. He also learned from those conversations that Cladianos had advised the subcontractors that Friedhoff was no longer in charge of the job. Friedhoff never thereafter discussed the matter with Cladianos or made formal tender of his services.

In the trial court Cladianos contended that the contract by its terms was subject to termination at any time and that it had been expressly so terminated by him prior to July 10, 1947. This contention was denied by Friedhoff and the trial court by its findings decided this factual issue in Friedhoff's favor. No assignment of error is made in this regard and we therefore must accept the terms of the contract as alleged by Friedhoff and found by the trial court: to cover the whole of the construction with compensation computed upon the total cost thereof.

Cladianos contends that, notwithstanding the existence of the agreement and its scope as determined below, Friedhoff is not entitled to rely on such contract and that his recovery should be limited to quantum meruit for the services actually performed by him prior to discontinuance of work on February 4, 1947. Two arguments are advanced in support of this contention:

First: That to entitle him to rely on breach of the contract, Friedhoff must have tendered his services to Cladianos, thus giving actual notice that he was ready, able and willing to proceed with his side of the agreement. The nature of this "tender" is set forth in 12 Am.Jur. 891 (Contracts, sec. 334), as follows:

"The word 'tender' as used in such connection does not mean the same kind of offer as when it is used in reference to the payment or offer to pay an ordinary debt due in money, where the money is offered to a creditor who is entitled to receive it, nothing further remains to be done, and the transaction is completed and ended; but it means only a readiness and willingness accompanied with an ability on the part of one of the parties to do the acts which the agreement requires him to perform, provided the other will concurrently do the things which he is required by it to do, and a notice by the former to the latter of such readiness. Such readiness, ability, and notice are sufficient evidence of, and indeed imply, an offer or tender in the sense in which those terms are used in reference to mutual and concurrent agreements. It is not an absolute, unconditional offer to do or transfer anything at all events, but it is, in its nature, conditional only, and dependent on, and to be performed only in case of, the readiness of the other party to perform his part of the agreement."

The law is clear, however, that any affirmative tender of performance is excused when performance has in effect been prevented by the other party to the contract. See: 3 Williston on Contracts (Rev.Ed.) 1952 (sec.

677), 2325 (sec. 832); 17 C.J.S. 986, (Contracts, sec. 481); 12 Am.Jur. 889, (Contracts, sec. 333).

As is stated by Mr. Williston (supra, sec. 677): "It is a principle of fundamental justice that if a promisor is himself the cause of the failure of performance, either of an obligation due him or of a condition upon which his own liability depends, he cannot take advantage of the failure."

In this respect it is stated in Lake Shore & M. S. Ry. Co. v. Richards, 152 Ill. 59, 38 N.E. 773, 779, 30 L.R.A. 33, that the term "prevented from performing" does not mean:

"* * * that there must be physical prevention, but that any acts, conduct, or declarations of the party, evincing a clear intention to repudiate the contract, and to treat it as no longer binding, is a legal prevention of performance by the other party." 38 N.E. at 779.

"* * * It seems clear both upon principle and by authority, that where one party to an executory contract refuses to treat it as subsisting and binding upon him, or, by his act and conduct, shows that he has renounced it, and no longer considers himself bound by it, there is, in legal effect, a prevention of performance by the other party. And it can make no difference whether the contract has been partially performed, or the time for performance has not yet arrived, nor is it important whether the renunciation be by declaration of the party that he will be no longer bound, or by acts and conduct which clearly evince that the determination has been reached, and is being acted upon." 38 N.E. at 780.

"* * * a refusal on the part of the defendant to perform obviated the necessity of performance, or tender of performance, on the part of the plaintiff, after such refusal." 38 N.E. at 782.

[Headnote 2]

It should be obvious that a contract of employment to commence at an indefinite date in the future, the fixing of which date is dependent upon circumstances beyond the control of the parties, demands notice from the

employer to the employee of the fact that circumstances permit commencement: notice of the time when such employment is to commence. Clearly, Friedhoff was awaiting word from Cladianos that the latter was prepared to continue with construction. Friedhoff testified that he was ready, able and willing to proceed. He had twice before, during the course of the contract, demonstrated that he was ready, able and willing to proceed. To demand tender in the absence of any notice from Cladianos would be to attribute to Friedhoff clairvoyant and telepathic powers which even in these enlightened days of extrasensory perception would appear to be considerably beyond the reach of our fictional "reasonable man."

It is clear from the record, that proceeding as he did without notice to Friedhoff, Cladianos deliberately intended to dispense with Friedhoff's services. This quite apparently was the view of the trial court which found:

"* * * that on or about July 10, 1947, the defendant wrongfully and without cause or excuse terminated the employment of the plaintiff and rescinded the aforesaid contract.

"That the plaintiff has always been ready, willing and able to perform all of the services required of him under the aforesaid agreement, but defendant has refused and neglected to permit plaintiff to perform said services and unlawfully and without cause or excuse, terminated said contract with the plaintiff; * * *."

We must conclude that by proceeding as he did on July 10, 1947, Cladianos was guilty of a breach of the contract of employment; that by virtue of his breach and his prevention of Friedhoff's performance, any tender of performance by Friedhoff which otherwise might have been required was excused.

Cladianos, however, contends that tender should have been made by Friedhoff as soon as he learned through

his own sources of information of the fact that construction had recommenced. By that time, however, the contract had already been broken and Friedhoff's right to recover damages had been brought into existence; tender had already been excused. It would appear that the true basis for Cladianos's objection to Friedhoff's passive acceptance of the breach is not that he failed to make timely tender of his services, but that he failed to protest the breach so that some discussion of the parties' respective legal rights might have been had and some adjustment thereof negotiated. Friedhoff, however, was under no obligation to protest and negotiate. Cladianos may well have been lulled into a comforting sense of legal security by such failure to protest. He possessed, however, no right of protection against being so lulled. Nor can he say that his position was in any respect changed in reliance on his sense of security. His position was established when he proceeded without notice to Friedhoff and his course, thus established, continued to the completion of the work without regard to Friedhoff's apparent acceptance of the breach.

Second: Cladianos contends that since Friedhoff did not fully perform his part of the contract, he is limited to quantum meruit for the services actually performed by him. Emphasis is laid upon the fact that a substantial portion of the construction was completed after July 10, 1947, and without the benefit of any services on the part of Friedhoff. To allow him the contractual 10 percent of the cost of that portion of the construction would be improper and unjust, it is contended.

The authorities cited by Cladianos in support of this contention have to do with the rule of partial performance. They are cases, for the most part, where the party seeking compensation himself abandoned the contract before performing fully or where his performance in other respects fell short of complete performance. In cases such as the one before us, where it is the other

party to the contract who is guilty of the breach or of prevention of performance, the complaining party is not limited to quantum meruit. True, he may *elect* to recover in quantum meruit (as certain of appellant's authorities indicate) but may also elect to stand upon the contract. See: 9 Am.Jur. 74 (Building and Construction Contracts, sec. 117).

The measure of damages here applicable is that applied in Bradley v. Nevada-California-Oregon Railway, 42 Nev. 411, 422; 178 P. 906, 909, where it is stated:

"The amount which would have been received if the contract had been kept is the measure of damages if the contract is broken, and this means the value of the contract, including the profits and advantages which are its direct results and fruits. 8 R.C.L. 452. And in case of contracts like this the loss is, among other things, the difference between the cost of doing the work and the price to be paid for it. This difference, we apprehend from the evidence, was the inducement and real consideration which caused the contractor to enter into the contract, and to deprive him of it, when the owner put an end to the work without his fault, would be unjust. Hinckley Co. v. P. B. & S. Co., 121 U.S. 264, 275, 7 Sup.Ct. 875, 30 L.Ed. 967, 970.

"Mr. Sutherland, in his work on Damages, vol. 1, 4th ed. sec. 66, says:

"'Where a party has contracted to perform labor from which a profit is to spring as a direct result of the work done at a contract price, and is prevented from earning this profit by the wrongful act of another party, his loss is a direct and natural result which the law will presume to follow the breach of the contract; and he is entitled to recover it without special allegations in his declaration. This he will be entitled to establish by showing how much less than the contract price it will cost to do the work or perform the contract.'"

In the case at bar no showing has been made as to

the cost to Friedhoff of performing the remainder of the contract and we may assume that no cost was involved.

Judgment of the trial court and its order denying motion for new trial are affirmed with costs.

BADT, C. J., and EATHER, J., concur.