706 So.2d 75 (1998)
SOUTHFORK INVESTMENTS GROUP, INC., Rondout Valley Campground, Inc., and E & J Properties, Inc., Appellants,
v.
George E. WILLIAMS, Appellee.
John D. BURKEY, Appellant/Cross-Appellee,
v.
George E. WILLIAMS, Appellee/Cross-Appellant.
Nos. 95-01640, 95-02235.
District Court of Appeal of Florida, Second District.
February 18, 1998.
*76 James A. Yancey of James A. Yancey, P.A., Lakeland, for Appellants Southfork, Rondout & E & J; and Jon H. Anderson of Anderson & Artigliere, P.A., Lakeland, for Appellant/Cross-Appellee Burkey.
Dennis R. Pemberton of Harper, Kynes, Geller, Watson & Buford, P.A., Clearwater, for Appellee/Cross-Appellant.
NORTHCUTT, Judge.
These appeals stem from litigation among the parties over ownership of the stock of the appellant corporations. The dispute gave rise to two final orders: an amended final *77 judgment awarding the stock to George Williams, and a final judgment in Williams's favor on his claim for unpaid salary. We affirm, without further comment, the latter judgment on the salary claim. We also affirm the result reached in the former judgment, but we write to clarify the extent of and bases for that result.

BACKGROUND
Williams and John Burkey were partners in the business of developing and operating recreational vehicle campgrounds through three corporate entities, Southfork Investments Group, Inc., Rondout Valley Campground, Inc., and E & J Properties, Inc. At the time of the events leading to this litigation, each of the corporations had issued 200 outstanding shares of stock. Williams and Burkey each owned half the shares of each corporation.
Owing to a deterioration in their business relationship, in 1988 Williams and Burkey negotiated an agreement under which Burkey purchased Williams's shares in the three corporations for $250,000. This transaction was accomplished with four documents, all executed at the July 1988 closing: a Capital Stock Purchase Agreement, a Capital Stock Escrow and Disposition Agreement, and two promissory notes. More will be said of the specific terms of these documents. In broad outline, Burkey paid Williams $25,000 cash and gave him two nonrecourse promissory notes, one for $215,000 and the other for $10,000. Williams delivered his stock certificates to Burkey. These were cancelled on the books of the corporations, which then issued Burkey substitute certificates reflecting his ownership of the shares. Burkey, who now owned all the outstanding shares of the corporations, deposited half of them100 shares in each corporationwith an escrow agent as security for his payment of the two promissory notes.
Several months after the closing, Burkey executed a document entitled "Assignment and Assumption Agreement." It recited that Burkey had already acquired all of Williams's stock in the corporations in exchange for cash and two promissory notes. Curiously, it then purported to assign to each corporation Burkey's "right to acquire" the shares of that corporation. Further, the document provided that Rondout Valley and Southfork Investments would assume Burkey's obligations under the notes, pro rata based on the respective purchase prices of the shares. The document was signed simply "John D. Burkey," presumably on his own behalf. It contained no indication that Burkey, or anyone else, executed it on behalf of any of the corporations.

THE DISPUTE
In December 1988, Burkey attempted to claim a set-off against a payment due Williams under the $10,000 promissory note. Williams objected, notified the escrow agent that the note was in default, and demanded possession of the escrowed stock. When Burkey objected to the escrow agent's surrender of the stock, Williams sued Burkey. Although only half the corporations' shares had been placed in escrow, Williams contended that the purchase agreement had provided that all outstanding shares of the corporations were to be pledged as security for the promissory notes. Accordingly, he claimed that upon default in payment of the notes he was entitled to all the stock of the corporations. In addition, he sought a judgment for $8,000 in unpaid salary.
It is unnecessary to describe the details of the ensuing litigation beyond the following salient events and rulings:
1) Burkey attempted to redeem the collateral by tendering the sums due. The circuit court held that this tender was ineffective because Burkey had no right to redeem the collateral as a "debtor" under the Uniform Commercial Code.
2) The corporations, who were permitted to intervene in the litigation over Williams's objection, attempted to redeem the collateral by tendering the sums due. The court initially denied the corporations' motion for summary judgment on this issue. Although the court did not expressly rule on this question in its amended final judgment, it impliedly rejected the corporations' attempt to redeem by virtue of the last ruling described below.
*78 3) The court held that the promissory notes were secured only by the 100 shares of each corporation that had been placed in escrow.
4) The court found that there had been a default in payment of the $10,000 promissory note, and that Williams was entitled to the shares in escrow. The court directed the escrow agent to "convey" the shares to Williams.
On appeal, no one challenges the finding that there was a default under the note. Our discussion of the other issues embodied in these rulings follows.

BURKEY'S RIGHTS
When Burkey attempted to tender the sums due Williams, he was endeavoring to exercise the debtor's right of redemption provided in the Uniform Commercial Code at section 679.506, Florida Statutes (1987).[1] Under that statute a debtor has the right to redeem collateral by tendering fulfillment of the secured obligations at any time before the collateral is sold or the obligations are discharged by the secured party's election to retain the collateral under other provisions of the Code. "Debtor" is defined at section 679.105(1)(d) to mean "the person who owes payment or other performance of the obligation secured, whether or not he owns or has rights in the collateral[.]" Also, "[w]here the debtor and the owner of the collateral are not the same person, the term `debtor' means the owner of the collateral[.]"
The circuit court rejected Burkey's effort to redeem the shares because it found that Burkey was not a "debtor" as contemplated by section 679.506. The court observed that Burkey had assigned his "rights to the collateral" to the corporations, and therefore could not be considered the owner of the collateral. Further, "[w]hile the definition of `debtor' does provide that the term can include obligors even where they have no rights in the collateral, the Court finds that it would not be appropriate to consider Burkey a debtor under the undisputed facts of the case. Burkey is not truly an obligor as he has no personal liability for debt under the nonrecourse note." We agree that Burkey's effort to redeem the collateral was ineffective, but not for the reasons recited by the circuit court.
Although both parties have made persuasive arguments on the issue, the question whether the maker of a nonrecourse note is a debtor for purposes of the right of redemption set forth in section 679.506 is not squarely presented here. The reason is that in this instance the parties granted that right to Burkey by contract. The Capital Stock Escrow and Disposition Agreement provided that upon default in payment and the note holder's receipt of the escrowed shares, the holder would be entitled to sell such of the shares as necessary to satisfy his claims against the maker, "subject to the rights granted to a debtor under the Florida Uniform Commercial CodeSecured Transactions, Chapter 679, Florida Statutes (Part V)." Alternatively, the holder could retain the shares, in which case he was required to give the maker written notice of that election "and proceed in accordance with the provisions of § 679.505(2), Florida Statutes, or its successor."
Thus, notwithstanding the parties' contemplation that Burkey's promissory notes were to be nonrecourse obligations, their contract provided that if Williams elected to sell the shares, Burkey would enjoy the rights of a debtor under chapter 679. These rights necessarily included the debtor's opportunity to redeem contained in section 679.506. On the other hand, if Williams intended to retain the shares in satisfaction of the secured obligation, he was required to give written notice and proceed in accordance with section *79 679.505(2), Florida Statutes (1987).[2] Under that section, a debtor may object to the secured party's retention of the collateral, and thereby require him to sell it. Again, under the escrow agreement any such sale would be subject to the debtor's right of redemption under section 679.506.
Neither do we agree that, vis-a-vis Burkey's right to redeem, his ownership of the collateral was affected by his so-called "assignment" to the corporations. For these purposes, at least, that document was simply a nullity. Although it purported to assign Burkey's "right to acquire" the shares to the respective corporations, the fact is that Burkey already owned the shares. And, although the consideration for the "assignment" apparently was to be the corporations' assumption of responsibility for paying Burkey's notes to Williams, the document did not reflect that the corporations had ever agreed or undertaken to do so. See Auerbach v. McKinney, 549 So.2d 1022, 1031 n. 2 (Fla. 3d DCA 1989) (holding that attempted assignment was invalid for lack of consideration). Whatever may have been the intended purpose of this odd instrument, it simply was not effective to transfer Burkey's ownership of the escrowed shares.
Both as the owner of the shares in escrow, and pursuant to the contract provisions granting him the rights of a debtor under chapter 679, Burkey was entitled to redeem the collateral under section 679.506.
Nevertheless, albeit for the wrong reason, the circuit court correctly held that Burkey's attempt to redeem was not effective. Section 679.506 permits a debtor to redeem collateral by tendering fulfillment of all obligations secured by the collateral as well as the reasonable costs and legal expenses associated with the secured party's recovery and handling of the collateral. In this case, Burkey's purported tender consisted of a letter to Williams's attorney informing him of Burkey's "intention to redeem." The letter advised that Burkey had deposited the sums owed under the $10,000 note in his attorneys' trust account. The letter also stated that Burkey was "willing" to pay all of Williams's reasonable legal expenses and costs "after presentment of proper affidavits as to fees and costs, and review by an appropriate judicial official."
To make an effective tender, the debtor must actually attempt to pay the sums due; mere offers to pay, or declarations that the debtor is willing to pay, are not enough. See Rissman v. Kilbourne, 643 So.2d 1136, 1140 (Fla. 1st DCA 1994) (holding debtor's letter advising that sums to pay the secured debt had been deposited in a trust account, and that he was ready and willing to transmit payment upon receipt of creditor's instructions, was not a valid tender). Burkey's letter did nothing more than inform Williams that he had deposited a sum sufficient to pay the obligation in his attorneys' trust account. It did not transmit payment or, for that matter, even transmit an actual offer to pay. Consequently, Burkey's letter was not an effective tender of fulfillment of the obligations secured by the collateral.

THE CORPORATIONS' ATTEMPT TO REDEEM
We have already determined that Burkey's "assignment" to the corporations was ineffective to transfer ownership of the stock or to *80 make the corporations responsible for the secured indebtedness. Therefore, the corporations were not "debtors" for purposes of section 679.506 redemption rights. Moreover, the corporations' attempted tender was in the same form as Burkey's, and was ineffective for the same reasons.
We write on this topic, however, because the circuit court's stated reason for denying the corporations' motion for summary judgment on the issue was incorrect, and could affect the parties' future dealings. The court rejected the corporations' attempt to redeem the collateral because, in the court's view, upon default under the note Williams was "entitled to control of his original 50% ownership of the corporations," Williams had not approved the corporations' redemption of the collateral, and there was a question whether the redemption was in the corporations' best interests.
The initial premise just described was mistaken insofar as it suggested that Williams became vested with ownership of the escrowed stock upon a default in payment of the secured note. Rather, the escrow agreement provided that upon default Williams was entitled to take delivery of the collateral from the escrow agent. As we have seen, under both the agreement and the Uniform Commercial Code, Williams then had two options, i.e., sell shares as necessary to satisfy the secured obligation, or give notice of his intention to retain the shares. In the latter case, a timely written objection by Burkey would require Williams to sell the shares. Under both the agreement and section 679.504, any excess proceeds or unsold shares were to be returned to Burkey.[3]

NUMBER OF SHARES AT ISSUE
Williams contends that he was entitled to receive all the corporations' outstanding shares, not just the half deposited in escrow. He points out that the Capital Stock Purchase Agreement recited that the purchaser was acquiring and the seller was selling and delivering "the issued and outstanding shares of the common capital stock, (the `Shares')" of the three corporations. Therefore, he argues, when the agreement provided that the purchaser was to deliver "the Shares" to the escrow agent, it clearly and unequivocally required him to place all the corporations' stock in escrow as security for payment of the promissory notes.
The circuit court correctly rejected this argument. When construing or enforcing a contract, the court must glean the parties' intention from the document as a whole, not from one passage taken in isolation. See Allegheny Mutual Casualty Co. v. State of Florida, 176 So.2d 362 (Fla. 2d DCA 1965). Further, documents executed as part of a single transaction and concerning the same subject matter must be construed together. See KRC Enterprises, Inc. v. Soderquist, 553 So.2d 760 (Fla. 2d DCA 1989).
*81 Here, the purchase agreement initially recited that Williams was selling "the Shares" of the corporations. It also provided that he was to "sell and deliver to the Purchaser good, valid and marketable title to the Shares ... by delivering to the Purchaser stock certificates representing the Shares [.]" When the shares were delivered at closing, the parties were to cause the corporations to cancel "each certificate delivered to the Purchaser" and to issue substitute certificates evidencing the purchaser's ownership of "the Shares." Then, upon the purchaser's "receipt of the certificates evidencing his ownership of the Shares", he was to deposit "the Shares" in escrow to secure payment of the promissory notes.
The agreement also stated, and it is undisputed, that Williams owned only half the 200 outstanding shares of each corporation. It being a certainty that Williams could not sell or deliver what he did not own, the circuit court reasonably concluded that "the Shares" Burkey was to receive at closing and deposit into escrow could only have referred to the 100 shares of each corporation that he was buying from Williams. That interpretation of the purchase agreement was consistent with the escrow agreement, which contemplated and reflected the deposit of 100 shares of each corporation, and with the promissory notes Williams accepted at the closing, which stated that they were secured by 100 shares of each corporation.

CONCLUSION
In sum, we hold as follows:
As it is undisputed that there was a default under the promissory note, the escrow agreement entitles Williams to take possession of the stock in escrow, representing one-half the outstanding shares of the corporations. Upon his receipt of the stock, Williams must either proceed to sell sufficient shares to satisfy the obligation, or give notice of his intention to retain them.
Burkey, by virtue of the escrow agreement and as the owner of the stock, enjoys the rights of a debtor under the Uniform Commercial Code, including both the right to object to Williams's retention of the collateral, and the right to redeem the collateral under section 679.506.
As clarified above, we affirm the amended final judgment.
ALTENBERND, A.C.J., and FULMER, J., concur.
NOTES
[1] Debtor's right to redeem collateral.At any time before the secured party has disposed of collateral or entered into a contract for its disposition under s. 679.504 or before the obligation has been discharged under s. 679.505(2) the debtor or any other secured party may unless otherwise agreed in writing after default redeem the collateral by tendering fulfillment of all obligations secured by the collateral as well as the expenses reasonably incurred by the secured party in retaking, holding and preparing the collateral for disposition, in arranging for the sale, and to the extent provided in the agreement and not prohibited by law, his reasonable attorneys' fees and legal expenses.
[2] Compulsory disposition of collateral; acceptance of the collateral as discharge of obligation.

(2) In any other case involving consumer good or any other collateral, a secured party in possession may, after default, propose to retain the collateral in satisfaction of the obligation. Written notice of such proposal shall be sent to the debtor and, except int he case of consumer goods, to any other secured party who has a security interest in the collateral and who has duly filed a financing statement indexed in the name of the debtor in this state. If the debtor or other person entitled to received notification objects in writing within 30 days from the date the notification is sent by the secured party or if any other secured party objects in writing within 30 days after the secured party obtains possession, the secured party must dispose of the collateral under s. 679.504 if the debtor or such other person has not signed after default a conspicuous statement renouncing or modifying his rights under this subsection. In the absence of such written objection, the secured party may retain the collateral in satisfaction of the debtor's obligation.
[3] Our record reflects that prior to entry of the amended final judgment Williams served a written notice of his intention to retain the collateral in satisfaction of the obligation. Both Burkey and the corporations made timely written objections. Therefore, under both the escrow agreement and section 679.505(2) Williams would be obliged to sell the shares necessary to satisfy the obligation. In his brief Williams points out that section 679.505(2) provides that a secured party "in possession" of the collateral may give notice of his intent to retain it, subject to the debtor's right to object in writing within 30 days. Williams argues that, because the stock was in the escrow agent's possession when Burkey objected, the objection was premature, and therefore was a nullity. Further, he claims that Burkey's right to object expired 30 days after the circuit court entered judgment directing the escrow agent to convey the stock to Williams. But we note that Williams's notice of his intention to retain the collateral was, itself, premature, because he did not then possess the stock. See Sprangers v. Fundamental Business Technology, 412 N.W.2d 47 (Minn.App.1987). The possession requirement of section 679.505(2) is not waivable. Sprangers, 412 N.W.2d at 50; § 679.501(3)(c), Fla.Stat. (1987). Here, the escrow agreement states that in the event of a dispute as to whether there has been a default, the escrow agent is not to deliver the shares except pursuant to a written agreement of the parties or as directed by "a final judgment entered by a court of competent jurisdiction as to which the time for appellate review has expired and no appeal has been taken[.]" To date, there has been no such final judgment. Therefore, under the terms of the escrow agreement Williams cannot yet have possession of the collateral, and therefore cannot yet give an effective notice of his intention to retain it.