135 Nev., Advance Opinion 7

# IN THE SUPREME COURT OF THE STATE OF NEVADA

BANK OF AMERICA, N.A.; THE BANK OF NEW YORK MELLON, F/K/A THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2005-17; AND MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., Appellants,

vs.

THOMAS JESSUP, LLC SERIES VII; FOXFIELD COMMUNITY ASSOCIATION; AND ABSOLUTE COLLECTION SERVICES, LLC, Respondents.

No. 73785

FILED

MAR 07 2019

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Appeal from a district court final judgment following a bench trial in a quiet title action. Eighth Judicial District Court, Clark County; Linda Marie Bell, Judge.

*Reversed and remanded.*

Akerman LLP and Darren T. Brenner and William S. Habdas, Las Vegas, for Appellants.

Shane D. Cox, Las Vegas, for Respondents Foxfield Community Association and Absolute Collection Services.

Law Office of Richard L. Tobler, Ltd., and Richard L. Tobler, Las Vegas, for Respondent Thomas Jessup, LLC Series VII.

BEFORE HARDESTY, STIGLICH and SILVER, JJ.

SUPREME COURT
OF
NEVADA

(O) 1947A

19-10173

## OPINION

PER CURIAM:

In *SFR Investments Pool 1, LLC v. U.S. Bank, N.A.*, 130 Nev. 742, 334 P.3d 408 (2014), this court held that NRS 116.3116(2) provides a homeowners' association (HOA) with a "superpriority" lien that, when properly foreclosed, extinguishes a first deed of trust. This court subsequently held in *Bank of America, N.A. v. SFR Investments Pool 1, LLC*, 134 Nev., Adv. Op. 72, 427 P.3d 113 (2018), that a deed of trust beneficiary can preserve its deed of trust by tendering the superpriority portion of the HOA's lien before the foreclosure sale is held.

In this appeal, we address two issues. First, we consider whether an offer to pay the superpriority amount in the future, when that amount is determined, constitutes a tender sufficient to preserve the first deed of trust under *Bank of America*. We conclude that such an offer is not sufficient to constitute a tender. Second, we address whether a formal tender is excused when the party entitled to payment represents that if a tender is made, it will be rejected. We conclude that such a representation excuses the requirement of making a formal tender. Here, the HOA's agent told the deed of trust beneficiary's agent that it would reject a superpriority tender if made. The deed of trust beneficiary's agent was therefore excused from making a formal tender, such that under *Bank of America*, the ensuing foreclosure sale did not extinguish the first deed of trust. As the district court's judgment determining otherwise was erroneous, we reverse and remand.

### FACTS AND PROCEDURAL HISTORY

The subject property is located in a neighborhood governed by respondent Foxfield Community Association, which is an HOA. The former

 

homeowner had obtained a loan to purchase the property, which was secured by a deed of trust listing appellant Mortgage Electronic Registration Systems, Inc., as the nominal beneficiary. In 2011, beneficial interest in the deed of trust was assigned to appellant Bank of New York Mellon, and at some point, appellant Bank of America started servicing the loan on Bank of New York Mellon's behalf.[1]

Also by 2011, the former homeowner had become delinquent on her monthly HOA assessments, and Foxfield's agent, respondent Absolute Collection Services (ACS), instituted foreclosure proceedings by recording and mailing a Notice of Delinquent Assessment Lien and then a Notice of Default. Upon receiving the Notice of Default, the Bank retained the law firm of Miles, Bauer, Bergstrom & Winters, LLP (Miles Bauer) to address the matter. An attorney with Miles Bauer, Rock Jung, wrote a letter to ACS in August 2011 stating in relevant part that

> a portion of your HOA lien is arguably senior to [the Bank's] first deed of trust, specifically the nine months of assessments for common expenses incurred before the date of your notice of delinquent assessment . . . . It is unclear, based upon the information known to date, what amount the nine months' of common assessments . . . actually are. *That amount, whatever it is, is the amount [the Bank] should be required to rightfully pay* to fully discharge its obligations to the HOA . . . and my client hereby offers to pay that sum *upon presentation of adequate proof of the same by the HOA.*

(Emphases added.) In response, an employee of ACS, Kelly Mitchell, sent a fax to Miles Bauer in September 2011 explaining in relevant part that

---

[1]This opinion refers collectively to all three appellants as "the Bank."

in conversations past, you had stated your client[']s position of paying for 9 months of assessments . . . all occurring ***before*** foreclosure by your client.

I am making you aware that it is our view that without the action of foreclosure [by the Bank], *a 9 month Statement of Account is not valid.* At this time, I respectfully request that you submit the Trustees Deed Upon Sale showing your client's possession of the property and the date that it occurred. *At that time, we will provide a 9 month super priority lien Statement of Account. . . .*

*We recognize your client's position as the first mortgage company as the senior lien holder.* Should you provide us with a recorded Notice of Default or Notice of Sale, we will hold our action so your client may proceed.

(Last three emphases added.) The letter went on to explain that Miles Bauer could pay $50 if it still wanted a statement of account.

Following receipt of ACS's fax, neither Miles Bauer nor the Bank took any additional actions to protect the first deed of trust, and ACS eventually sold the property at a foreclosure sale in June 2012 to CSC Investment Group, which later conveyed its interest in the property to Thomas Jessup, LLC, which subsequently conveyed its interest in the property to respondent Thomas Jessup, LLC Series VII.[2]

In 2013, the Purchaser instituted the underlying quiet title action, seeking a determination that the foreclosure sale had extinguished the Bank's deed of trust. In response, the Bank sought a determination that the deed of trust was not extinguished, and alternatively, it asserted claims

_____

[2]This opinion refers collectively to CSC Investment Group, LLC; Thomas Jessup, LLC; and Thomas Jessup, LLC Series VII as "the Purchaser."

against ACS and Foxfield seeking to hold them accountable in the event that it was determined the deed of trust had been extinguished. The district court denied the parties' competing summary judgment motions, and a bench trial was eventually held in April 2017. As relevant here, Mr. Jung and Ms. Mitchell both testified regarding their impressions of the above-described correspondence. Mr. Jung testified that he interpreted ACS's fax as a representation that "there was no superpriority lien amount that was due and owing" and that ACS "[was] waiving any right to demand such an amount at that time." Ms. Mitchell testified it was ACS's position that there was no superpriority portion of the HOA's lien that was owed until after the Bank held its own foreclosure sale. She further testified that ACS's policy would be to reject any superpriority tender if it was accompanied by a condition explaining that the Bank's obligations had been "paid in full."

Following the trial, the district court ruled in favor of the Purchaser and held that the foreclosure sale extinguished the Bank's deed of trust. The district court concluded that Miles Bauer's letter offering to pay the yet-to-be-determined superpriority amount was insufficient to constitute a tender. Although the district court observed that "Mr. Jung understood that failure to pay the superpriority portion of the lien would result in the loss of his client's interest in the property," the court did not explicitly address Mr. Jung's testimony regarding his interpretation of the fax. With respect to the Bank's claims against ACS and Foxfield, the district court determined that those claims failed.

Following entry of the district court's judgment, the Bank filed this appeal. We review the district court's factual findings for substantial evidence and its legal conclusions de novo. *Weddell v. H2O, Inc.*, 128 Nev. 94, 101, 271 P.3d 743, 748 (2012).



*DISCUSSION*

The Bank first contends that Miles Bauer's letter offering to pay the superpriority portion of the HOA's lien, once that amount was determined, was sufficient to constitute a valid tender such that the first deed of trust was not extinguished by the foreclosure sale. The Purchaser counters that an offer to make a payment at some point in the future cannot constitute a valid tender. We agree with the Purchaser, as it is the generally accepted rule that a promise to make a payment at a later date or once a certain condition has been satisfied cannot constitute a valid tender. *See Southfork Invs. Grp., Inc. v. Williams*, 706 So. 2d 75, 79 (Fla. Dist. Ct. App. 1998) ("To make an effective tender, the debtor must actually attempt to pay the sums due; mere offers to pay, or declarations that the debtor is willing to pay, are not enough."); *Cochran v. Griffith Energy Serv., Inc.*, 993 A.2d 153, 166 (Md. Ct. Spec. App. 2010) ("A tender is an offer to perform a condition or obligation, coupled with the present ability of immediate performance, so that if it were not for the refusal of cooperation by the party to whom tender is made, the condition or obligation would be *immediately* satisfied." (internal quotation marks omitted)); *Graff v. Burnett*, 414 N.W.2d 271, 276 (Neb. 1987) ("To determine whether a proper tender of payment has been made, we have stated that a tender is more than a mere offer to pay. A tender of payment is an offer to perform, coupled with the present ability of immediate performance, which, were it not for the refusal of cooperation by the party to whom tender is made, would immediately satisfy the condition or obligation for which the tender is made."); *McDowell Welding & Pipefitting, Inc. v. U.S. Gypsum Co.*, 320 P.3d 579, 585 (Or. Ct. App. 2014) ("In order to serve the same function as the production of money, a written offer of payment must communicate a present offer of timely

payment. The prospect that payment might occur at some point in the future is not sufficient for a court to conclude that there has been a tender . . . ." (internal quotations, citations, and alterations omitted)); *cf.* 74 Am. Jur. 2d *Tender* § 1 (2012) (recognizing the general rule that an offer to pay without actual payment is not a valid tender); 86 C.J.S. *Tender* § 24 (2017) (same). Accordingly, we conclude that Miles Bauer's offer to pay the yet-to-be-determined superpriority amount was not sufficient to constitute a valid tender.

Alternatively, the Bank contends that its obligation to tender the superpriority amount was excused because ACS stated in its fax that it would reject any such tender if attempted. We agree with the Bank, as this is a generally accepted exception to the above-mentioned rule. *Guthrie v. Curnutt*, 417 F.2d 764, 765-66 (10th Cir. 1969) ("[W]hen a party, able and willing to do so, offers to pay another a sum of money and is told that it will not be accepted, the offer is a tender without the money being produced."); *In re Pickel*, 493 B.R. 258, 271 (Bankr. D.N.M. 2013) ("Tender is unnecessary if the other party has stated that the amount due would not be accepted."); *Mark Turner Props., Inc. v. Evans*, 554 S.E.2d 492, 495 (Ga. 2001) ("Tender of an amount due is waived when the party entitled to payment, by declaration *or by conduct,* proclaims that, if tender of the amount due is made, an acceptance of it will be refused." (internal quotation marks and alterations omitted)); 74 Am. Jur. 2d *Tender* § 4 (2012) ("A tender of an amount due is waived when the party entitled to payment, by declaration or by conduct, proclaims that, if tender of the amount due is made, it will not be accepted."); 86 C.J.S. *Tender* § 5 (2017) (same); *cf. Cladianos v. Friedhoff*, 69 Nev. 41, 45, 240 P.2d 208, 210 (1952) ("The law is clear . . . that any affirmative tender of performance is excused when

performance has in effect been prevented by the other party to the contract.").

Although ACS's fax did not explicitly state that it would reject a superpriority tender, we believe this is the only reasonable construction of the fax, which stated that "a 9 month Statement of Account is not valid" and refuted Miles Bauer's "position of paying for 9 months of assessments . . . all occurring **_before_** foreclosure by [the Bank]." Moreover, Mr. Jung testified at trial that he interpreted the letter as ACS having waived Foxfield's entitlement to a superpriority tender, and Ms. Mitchell's trial testimony confirmed that ACS would indeed have rejected a superpriority tender if Miles Bauer included a "paid in full" condition with the tender.[3]

Accordingly, we conclude that Miles Bauer's offer to pay the superpriority portion of Foxfield's lien, combined with ACS's rejection of that offer, operated to cure the default as to that portion of the lien such that the ensuing foreclosure sale did not extinguish the first deed of trust. *Cf. Bank of America*, 134 Nev., Adv. Op. 72, 427 P.3d at 118-21 (holding that

---

[3]This court held in *Bank of America* that Miles Bauer had a right to impose such a condition on behalf of its clients. 134 Nev., Adv. Op. 72, 427 P.3d at 118. To clarify, however, the "paid in full" condition in *Bank of America* pertained solely to the default referenced in Miles Bauer's letter and did not purport to absolve the deed of trust beneficiary of any future obligation to cure a subsequent superpriority default. By law, the HOA can initiate foreclosure proceedings for any future defaults, at which point the first deed of trust beneficiary would be responsible for again curing the superpriority default. *See Prop. Plus Invs., LLC v. Mortg. Elec. Registration Sys.*, 133 Nev., Adv. Op. 62, 401 P.3d 728, 731-32 (2017) (observing that an HOA can enforce a second superpriority default by restarting the foreclosure process).

a tender of the defaulted superpriority portion of an HOA's lien preserves the first deed of trust). The district court therefore committed legal error in concluding otherwise. *Weddell*, 128 Nev. at 101, 271 P.3d at 748. Although the district court observed that "Mr. Jung understood that failure to pay the superpriority portion of the lien would result in the loss of his client's interest in the property," we are unwilling to characterize this observation as a factual finding entitled to deference in light of the district court having failed to address the above-mentioned language in the fax and Mr. Jung's interpretation of that fax.[4]

In light of the foregoing, we reverse the district court's judgment insofar as it determined that the foreclosure sale extinguished the Bank's deed of trust, and we remand this matter for the district court to enter a judgment consistent with this opinion.[5]

_____, J.
Hardesty

_____, J.        _____, J.
Stiglich                            Silver

---

[4]We also are not persuaded by the Purchaser's argument that the Bank should be estopped from arguing that tender was excused.

[5]As the Bank's deed of trust was not extinguished, we need not address the viability of the Bank's claims against ACS and Foxfield. Similarly, we need not address the Bank's remaining arguments in support of its deed of trust remaining intact, as neither the Bank nor the Purchaser have expressed whether they would prefer to have the sale set aside or have the Purchaser take title to the property subject to the first deed of trust.

SUPREME COURT
OF
NEVADA

(O) 1947A