ROLLAND P. WEDDELL; GRANITE INVESTMENT GROUP, LLC; AND HIGH ROCK HOLDING, LLC, APPELLANTS, v. H2O, INC.; MICHAEL B. STEWART, AN INDIVIDUAL AND AS TRUSTEE OF THE MICHAEL B. STEWART TRUST; EMPIRE ENERGY, LLC; EMPIRE GROUP, LLC; EMPIRE FOODS, LLC; EMPIRE FARMS, LLC; ORIENT FARMS, LLC; WHITE PAPER, LLC; EMPIRE GEOTHERMAL POWER, LLC; NEVADA ENERGY PARK, LLC; AMOR II CORPORATION; M.B.S., INC.; TAHOE ROSE, LLC; CLEARWATER RIVER PROPERTIES, LLC; HONALO KAI, LLC; SIERRA ROSE, LLC; SUNDANCE FARMS, LLC; GNV ENTERPRISES, LLC; KOSMOS LEASE HOLDINGS, LLC; GRANITE CREEK LAND & CATTLE, LLC; EMPIRE SEED COMPANY LIMITED PARTNERSHIP; GEOR II CORPORATION; SAN EMIDIO RESOURCES, INC.; SAN EMIDIO AGGREGATE, INC.; AND JUNIPER HILL PARTNERS, LLC, RESPONDENTS.

No. 55200

March 1, 2012                    271 P.3d 743

[Rehearing denied April 27, 2012]
[En banc reconsideration denied May 24, 2012]

*Day R. Williams*, Carson City; *Sisco & Naramore* and *Kenneth D. Sisco*, Norco, California, for Appellants.

*Robison, Belaustegui, Sharp & Low* and *F. DeArmond Sharp, Keegan G. Low*, and *Kristen L. Martini*, Reno, for Respondents.

Before SAITTA, C.J., CHERRY and GIBBONS, JJ.

# OPINION

By the Court, CHERRY, J.:

In this appeal, we consider distinct issues arising from a fall-out between business partners. We first consider whether a judgment creditor divests a dual member and manager of a limited-liability company of his managerial duties. In doing so, we determine the rights and remedies of a judgment creditor pursuant to NRS 86.401. We conclude that a judgment creditor has only the rights of an assignee of the member's interest, receiving only a share of the economic interests in a limited-liability company, including profits, losses, and distributions of assets. Therefore, the judgment creditor and holder of a charging order against appellant Rolland P. Weddell's membership interests is simply entitled to Weddell's economic interest in appellant Granite Investment Group, LLC. For this reason, we reverse the district court's judgment relating to the scope of the charging order against Weddell's membership interests and remand this matter to the district court for further proceedings concerning Weddell's managerial interests in Granite.

We next consider whether a party may file a notice of pendency of actions on an option to purchase a membership interest in a limited-liability company. In resolving this issue, we define the scope of NRS 14.010 and conclude that parties should only file a notice of pendency when the action directly involves real property—more specifically, concerning actions for the foreclosure of a mortgage upon real property or actions affecting the title of possession of real property. In the matter before us, we conclude that the notice of pendency filed by Weddell is unenforceable, as the action on which it is based concerned an alleged expectancy in the purchase of a membership interest in respondent Empire Geothermal Power, LLC, and, thus, did not involve a direct legal interest in real property.

Lastly, we consider whether substantial evidence exists to support the district court's finding that Weddell had no ownership interest in respondent H2O, Inc. After meticulously reviewing the record, we conclude that substantial evidence supports the district court's findings that Weddell was merely an agent on behalf of respondent Michael B. Stewart and has never acquired an ownership interest in H2O. Accordingly, we affirm the district court's judgment in all other aspects.

## FACTS

Between 2000 and 2007, Stewart and Weddell entered into a business relationship concerning a number of different projects,

ranging from garlic farming to geothermal energy. Several disputes arose among the two parties, ultimately leading to the collapse of their business relationship. Upon the relationship's demise, Weddell filed a complaint asserting numerous claims against Stewart. Stewart also filed a complaint and asserted numerous counterclaims. After a four-day bench trial, the district court found in Stewart's favor on all counts. Weddell, on behalf of himself and his respective companies, filed this appeal. Below, we recapture the pertinent facts surrounding the collapse of Stewart and Weddell's relationship.

*Granite Investment Group & High Rock Holding*

Stewart and Weddell were both involved in some respect with Granite Investment Group and appellant High Rock Holding, LLC. In December 2004, Weddell was elected manager of Granite. Several months later in May 2005, Stewart and Weddell signed an amended and restated operating agreement (Granite operating agreement).[1]

According to the Granite operating agreement, Stewart received 1.5 votes and Weddell received 1 vote. Several years later, in October 2007, Stewart used his majority voting power to allegedly remove Weddell as manager. Thereafter, Stewart ostensibly elected himself manager of Granite. However, pursuant to section 5.10 of the Granite operating agreement, a manager can only be removed by the unanimous affirmative vote of all of the members. Addi-

---

[1]Around the same time, an option agreement was executed, which Weddell argues gave Granite an option to purchase 100 percent of a separate Stewart company owning a geothermal power plant and 20,000 acres of geothermal leases. Later, an April 2006 option agreement was signed by both parties and contains an integration clause. The district court found that the April 2006 option agreement to purchase the geothermal plant is valid, supported by consideration, and is binding upon the parties.

Weddell contends that the district court should have accepted the parties' May 2005 option agreement to purchase the geothermal plant, instead of finding that the April 2006 option agreement was valid, supported by consideration, signed, and binding. He argues that he was preoccupied when he signed the April 2006 agreement and that the May 2005 agreement remains pending under a binding mediation decision. The district court did not err in coming to this conclusion. *See Zhang v. Dist. Ct.*, 120 Nev. 1037, 1041 n.11, 103 P.3d 20, 23 n.11 (2004) (recognizing that a novation is a substitution of a new contract for an old contract, thereby extinguishing the old contract), *abrogated on other grounds by Buzz Stew, LLC v. City of N. Las Vegas*, 124 Nev. 224, 228 n.6, 181 P.3d 670, 672 n.6 (2008); *see also Campanelli v. Altamira*, 86 Nev. 838, 841, 477 P.2d 870, 872 (1970) (declaring that " ' "when a party to a written contract accepts it [a]s a contract he is bound by the stipulations and conditions expressed in it whether he reads them or not. Ignorance through negligence or inexcusable trustfulness will not relieve a party from his contract obligations." ' " (quoting *Level Export Corp. v. Wolz, Aiken & Co.*, 111 N.E.2d 218, 221 (N.Y. 1953) (quoting *Metzger v. Aetna Ins. Co.*, 125 N.E. 814, 816 (N.Y. 1920)))).

tionally, section 5.2 does not prohibit more than one manager at a time.

When Weddell was elected manager of the Granite Investment Group, he was also elected manager of High Rock Holding. To reflect the management changes at High Rock, Stewart and Weddell entered into an amended and restated operating agreement whereby Stewart had 1.5 votes and Weddell had 1 vote (High Rock operating agreement). Likewise, in October 2007, Stewart used his superior voting power to remove Weddell as manager of High Rock. While the Granite operating agreement required a unanimous affirmative vote of the members, the similarly numbered section of the High Rock operating agreement only required an affirmative vote of the members.

In October 2008, in an unrelated matter, the district court granted an application by a creditor to charge Weddell's membership interest in Granite and High Rock, among other Weddell entities, for over $6 million. Pursuant to NRS 86.401,[2] the charging order entitled the creditor to any and all disbursements and distributions, including interest, and all other rights of an assignee of the membership interest. Thereafter, Stewart purportedly purchased Weddell's remaining membership interest in Granite for $100 in accordance with section 10.2 of the Granite operating agreement.[3]

The district court concluded that the charging order divested Weddell of *both* membership and managerial rights in Granite and High Rock upon the tender of purchase money made by Stewart.[4] The district court also concluded that Stewart is the sole manager of Granite and High Rock.

## Empire Geothermal Power

During the course of the litigation, Weddell filed a notice of lis pendens against Stewart and Empire Geothermal Power, among others, clouding the title to Empire Geothermal's real property. Subsequently, Empire Geothermal filed a motion to cancel the notice of pendency under NRS 14.015, asserting that the underlying

---

[2]This statute was revised by the 2011 Legislature. *See* 2011 Nev. Stat., ch. 455, § 69, at 2800-01.

[3]Section 10.2 concerns voluntary transfers without the consent of the other members whereas section 10.4 concerns involuntary transfers, such as charging orders. Both sections would permit Stewart to buy out Weddell's membership interest. Under section 10.2, a transferring member is merely required to sell his or her membership interest for a purchase price of $100. On the other hand, section 10.4 includes an elaborate transferring scheme wherein the company must give written notice to the member and an appraisal must occur within thirty (30) days of the involuntary transfer.

[4]The district court's language concerning the divestiture of both membership and managerial rights is troublesome. It appears that the district court has conflated the purpose of a charging order with the statutory provisions encompassed in the parties' operating agreements.

action was for monetary damages and was not an action to foreclose on or an action affecting the title or possession of real property as mandated by NRS 14.010. In his opposition, Weddell asserted that the action involved real property because he was entitled to 100 percent of the membership interest in Empire Geothermal, including a geothermal power plant and 20,000 acres of geothermal leases.

During a hearing on the motion, the district court focused on the language in Stewart and Weddell's option agreement: "Granite Investment Group[,] LLC[,] shall purchase from [Stewart] entities their membership interest in Empire Geothermal Power." Following the hearing, the district court ordered that the notice of pendency recorded by Weddell be canceled, finding that Weddell's alleged expectancy in the purchase of the membership interest in Empire Geothermal involved personal property interests, not real property interests. The district court found that Weddell failed to establish that his action was for the foreclosure of a mortgage upon real property or that it affected the title or possession of real property as required by NRS 14.015(2)(a).

## H2O, Inc.

In the early 1980s, Stewart began farming garlic in Empire, Nevada. Stewart's food-processing company, Empire Foods, LLC, received a loan from a bank in 1999. Shortly thereafter, Empire Foods filed for Chapter 11 bankruptcy due to a decline in the garlic market. Stewart had Weddell, his business associate at the time, negotiate with the bank to reduce the loan. Instead of the bank taking the garlic inventory and the accounts receivable that were the original collateral to the loan, Weddell was able to extinguish nearly half of Stewart's debt.

In exchange for his successful negotiation with the bank, Weddell received a 15-percent interest in High Rock Holding from Stewart. According to Weddell, Stewart also promised him that he would receive $2.5 million in compensation if and when the funds became available. Stewart denies that he made such a promise. The alleged promise of $2.5 million was not memorialized on paper; nor were there any witnesses to the statements between Stewart and Weddell at the time the promise was purportedly made.

Apparently, in May 2004, Stewart gave Weddell a check for $2.5 million, with which Weddell ultimately purchased 100 percent of the stock (10,000 shares) in H2O, Inc. Shortly thereafter, Weddell assigned his alleged interest in H2O to White Paper, LLC, an entity owned and operated by Stewart. In June 2007, Weddell transferred any and all interest that he had in the shares of H2O stock to Stewart. Subsequently, a dispute arose as to whether the $2.5 million used to purchase the H2O stock belonged to Weddell or

Stewart and, thus, whether the stock was purchased for the benefit of Weddell or Stewart. The district court held that Weddell had never acquired an interest in the stock of H2O and was acting merely as Stewart's agent when he purchased the shares. The district court found that the June 2007 transfer would have transferred any interest that Weddell might have had in H2O to Stewart. The district court also found that Stewart was the source of virtually all monies and assets transferred into H2O. The court further found that the business activities between Stewart and Weddell were simply strategic and did not constitute fraud.

## DISCUSSION

The issues on appeal require us to review the district court's factual findings, as well as interpret statutory and contractual provisions. "The district court's factual findings . . . are given deference and will be upheld if not clearly erroneous and if supported by substantial evidence." *Ogawa v. Ogawa*, 125 Nev. 660, 668, 221 P.3d 699, 704 (2009). "Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion." *Whitemaine v. Aniskovich*, 124 Nev. 302, 308, 183 P.3d 137, 141 (2008). Issues involving statutory and contractual interpretation are legal issues subject to our de novo review. *See Canarelli v. Dist. Ct.*, 127 Nev. 808, 813, 265 P.3d 673, 676 (2011) (declaring that "[w]e review the 'district court's conclusions of law, including statutory interpretations, de novo'" (quoting *Borger v. Dist. Ct.*, 120 Nev. 1021, 1026, 102 P.3d 600, 604 (2004))); *Benchmark Insurance Company v. Sparks*, 127 Nev. 407, 411, 254 P.3d 617, 620 (2011) (providing that "'[i]nterpretation of a contract is a question of law that we review de novo'" (quoting *Farmers Ins. Exch. v. Neal*, 119 Nev. 62, 64, 64 P.3d 472, 473 (2003))).

### Judgment creditor's rights under the charging order

To better understand the preeminent issue, we first review the general nature of limited-liability companies, including the statutory framework pursuant to NRS Chapter 86. Next, we will present a historical overview of the charging order remedy. As part of this overview, we will analyze the rights of judgment creditors in the course of holding a charging order. Finally, we will explain the basis for our conclusion that, under Nevada law, judgment creditors have no right to participate in the management of the limited-liability company and only obtain the rights of an assignee of the member's interest—receiving only a share of the economic interests in a limited-liability company, including profits, losses, and distributions of assets. By limiting a creditor's right to exercise the

debtor member's management rights, we ensure that creditors of a limited-liability company cannot disrupt and interfere with the management rights of other members. This conclusion rests on the uncontested right of a member to choose his or her associates and to encourage investing by enabling limited members to invest money and to share profits, but without risking more than the amount they contributed.

### Limited-liability companies

Limited-liability companies (LLCs) are business entities created "to provide a corporate-styled liability shield with pass-through tax benefits of a partnership." *White v. Longley*, 244 P.3d 753, 760 (Mont. 2010); *Gottsacker v. Monnier*, 697 N.W.2d 436, 440 (Wis. 2005) (stating that "[f]rom the partnership form, the LLC borrows characteristics of informality of organization and operation, internal governance by contract, direct participation by members in the company, and no taxation at the entity level. From the corporate form, the LLC borrows the characteristic of protection of members from investor-level liability." (internal citation omitted)); *Elf Atochem N. America, Inc. v. Jaffari*, 727 A.2d 286, 287 (Del. 1999) (LLCs allow "tax benefits akin to a partnership and limited liability akin to the corporate form"). Originally enacted by Wyoming in 1977, the statutorily based creature of an LLC has expanded to all 50 states and the District of Columbia as a result of a favorable Internal Revenue Service ruling. *White*, 244 P.3d at 760; Keith Paul Bishop & Jeffrey P. Zucker, *Bishop and Zucker on Nevada Corporations and Limited Liability Companies* § 16.1 & n.7 (2011) (listing the states and years of enactment). With a goal of attracting new business to Nevada, the Secretary of State, with the support of the Attorney General, proposed the adoption of "the LLC" in 1991 as part of a comprehensive bill, A.B. 655, to streamline the corporate law in this state. Bishop & Zucker, *supra*, § 16.1; *see* Hearing on A.B. 655 Before the Joint Senate and Assembly Judiciary Comms., 66th Leg. (Nev., May 7, 1991). Along with Colorado, Florida, Kansas, and Wyoming, Nevada became the fifth state to enact such groundbreaking corporate legislation. Bishop & Zucker, *supra*, § 16.1 n.7.

### Statutory framework for Nevada LLCs

The rules governing the formation and operation of Nevada LLCs are set forth in NRS Chapter 86.[5] Those who wish to enter

---

[5]It is noteworthy that some sections of Chapter 86 appear to have been borrowed from Nevada's partnership law, NRS Chapter 88. Bishop & Zucker, *supra*, § 16.1 n.11.

into an LLC should be vastly familiar with this chapter in order to properly protect their interests. In considering the question at issue, we focus on the provisions in Chapter 86 that set forth the organization and management of an LLC, as well as the authorization of a charging order remedy for personal creditors of LLC members.

In Nevada, an LLC is formed by signing and filing the articles of organization, together with the applicable filing fees, with the Secretary of State. NRS 86.151; NRS 86.201. An LLC may, but is not required to, adopt an operating agreement, NRS 86.286, which is defined as "any valid written agreement of the members as to the affairs of a limited-liability company and the conduct of its business." NRS 86.101.[6] Unless the articles of organization or operating agreement provide otherwise, management of a limited-liability company is vested in its members in proportion to their contribution to capital. NRS 86.291. A member is "the owner of a member's interest in a limited-liability company or a noneconomic member." NRS 86.081. The term "[m]ember's interest" is defined as "a share of the economic interests in a limited-liability company, including profits, losses and distributions of assets." NRS 86.091.

The collection rights and remedies against a member's interest in a limited-liability company are governed by NRS 86.401. This provision recognizes the charging order as a remedy by which a judgment creditor of a member can seek satisfaction by petitioning a court to charge the member's interest with the amount of the judgment. NRS 86.401(1); *see Brant v. Krilich*, 835 N.E.2d. 582, 592 (Ind. Ct. App. 2005) (holding "that a charging order is the only remedy for a judgment creditor against a member's interest in an LLC," after interpreting a similar Indiana statute). A charging order directs the LLC to make distributions to the creditor that it would have made to the member. *See 91st Street v. Goldstein*, 691 A.2d 272, 282 (Md. Ct. Spec. App. 1997). As a result, a charging order affects only the debtor's partnership interest and does not permit a creditor to reach partnership assets.

"Charging orders originated as a statutory solution to cumbersome common law collection procedures 'that were ill-suited for reaching partnership interests.'" *Green v. Bellerive*, 763 A.2d 252, 256 (Md. Ct. Spec. App. 2000) (quoting *91st Street*, 691

---

[6]This statute was amended by the 2011 Legislature. It now defines operating agreement as "any valid agreement of the members as to the affairs of a limited-liability company and the conduct of its business, whether in any tangible or electronic form." *See* 2011 Nev. Stat., ch. 168, § 12, at 779.

A.2d at 275).[7] The charging order concept was first established in the United States in the 1914 Uniform Partnership Act and has since been replicated in some degree in nearly every United States jurisdiction, including Nevada. *91st Street*, 691 A.2d at 275; *see* NRS 86.401; NRS 88.535[8] (NRS Chapter 88 contains Nevada's partnership statutes).

Charging orders have been described as "nothing more than a legislative means of providing a creditor some means of getting at a debtor's ill-defined interest in a statutory bastard, surnamed 'partnership,' but corporately protecting participants by limiting their liability as . . . corporate shareholders." *Bank of Besthesda v. Koch*, 408 A.2d 767, 770 (Md. Ct. Spec. App. 1979). In short, "[a] charging order gives the charging creditor only limited access to the partnership interest of the indebted partner." *Green*, 763 A.2d at 257. Consequently, the judgment creditor does not unequivocally step into the shoes of a limited-liability member. *Id.* at 259. The limited access of a judgment creditor includes "*only* the rights of an assignee of the member's interest." NRS 86.401(1) (emphasis added). A judgment creditor, or assignee, is only entitled to the judgment debtor's share of the profit and distributions, takes no interest in the LLC's assets, and is not entitled to participate in the management or administration of the business. *Dixon v. American Industrial Leasing Co.*, 205 S.E.2d 4, 9 (W. Va. 1974); *see In re Lucas*, 107 B.R. 332, 336 (Bankr. D.N.M. 1989) (stating that "[a]ny assignee of the [membership] interest merely entitles the assignee to receive the profits to which the [member] would otherwise be entitled"); *Kellis v. Ring*, 155 Cal. Rptr. 297, 299 (Ct. App. 1979) (stating that "[w]hile [the judgment creditor] has a right to receive the share of the profits or other compensation by way of income, or the return of his contributions to which his assignor would otherwise be entitled, he has no right to interfere in the management of the limited partnership" (internal quotations omitted)); *Madison Hills Ltd. v. Madison Hills, Inc.*, 644 A.2d 363, 367 (Conn. App. Ct. 1994) (noting that "a charging creditor does not become a full partner, [and] is not entitled to manage the partnership"); *Olmstead v. F.T.C.*, 44 So. 3d 76, 79 (Fla. 2010) (providing that "an assignment of a membership in-

---

[7]Charging orders were formed by the English Partnership Act of 1890 as a result of an artificial and clumsy procedure whereby the town sheriff went down to the partnership's place of business, seized partnership assets, closed the partnership, infuriated the solvent partners, and caused the judgment creditor to bring an action for an injunction. *City of Arkansas City v. Anderson*, 752 P.2d 673, 681-82 (Kan. 1988); *see* J. Gordon Gose, *The Charging Order Under the Uniform Partnership Act*, 28 Wash. L. Rev. 1, 3 (1953).

[8]This statute was revised by the 2011 Legislature. *See* 2011 Nev. Stat., ch. 455, § 82, at 2807-08.

terest will not necessarily transfer the associated right to participate in the LLC's management''); *Green*, 763 A.2d at 260 (holding that the fundamental management rights of a partner are not transferred to a judgment creditor by a charging order); *see also* J. Gordon Gose, *The Charging Order Under the Uniform Partnership Act*, 28 Wash. L. Rev. 1, 13 (1953) (noting that ''a receiver does not become a partner or participate in the management'').[9] After the entry of a charging order, the debtor member no longer has the right to future LLC distributions to the extent of the charging order, but retains all other rights that it had before the execution of the charging order, including managerial interests.

### *Weddell's membership and managerial interests in Granite*

Here, the charging order levied by Weddell's creditor directed Granite to divert Weddell's rights to LLC profits and distributions to the creditor. The charging order only divested Weddell of his economic opportunity to obtain profits and distributions from Granite—charging only his membership interest, not his managerial rights. *See* NRS 86.401. Prohibiting the creditor from exercising Weddell's management rights reflects the principle that LLC members should be able to choose those members with whom they associate. *Green v. Bellerive*, 763 A.2d 252, 261-62 (Md. Ct. Spec. App. 2000).

We further conclude that the charging order triggered the involuntary transfer provision of the Granite operating agreement, section 10.4. Section 10.4 explicitly included charging orders in its purview. Therefore, we remand this case to the district court to resolve whether Stewart properly complied with section 10.4 and whether, as a result, Weddell was divested of his membership interest in Granite. In light of our conclusion, we direct the district court to determine whether Weddell has retained his managerial interests, and whether Stewart has elected himself co-manager pursuant to sections 5.2 and 5.10 of the Granite operating agreement. We also conclude that the district court did not err in finding that the April 2006 High Rock operating agreement signed by both parties controlled and that, under it, Weddell was voted out as manager of that LLC.

---

[9]This rationale is analogous to the rights of a transferee pursuant to NRS 86.351(1):

> [A] transferee of a member's interest has no right to participate in the management of the business and affairs of the company . . . [and] is only entitled to receive the share of profits or other compensation by way of income, and the return of contributions, to which the transferor would otherwise be entitled.

*Notice of lis pendens*

Weddell argues that the district court improperly canceled his notice of lis pendens because the option agreement to purchase the membership interest and assets of the geothermal company "affect[ed] . . . possession of real property." NRS 14.010(1).

The doctrine of lis pendens provides constructive notice to the world that a dispute involving real property is ongoing. NRS 14.010(3). "[L]is pendens are not appropriate instruments for use in promoting recoveries in actions for personal or money judgments; rather, their office is to prevent the transfer or loss of real property which is the subject of dispute in the action that provides the basis for the lis pendens." *Levinson v. District Court*, 109 Nev. 747, 750, 857 P.2d 18, 20 (1993); *see* NRS 86.351(1) (providing that "[t]he interest of each member of a limited-liability company is personal property"). "It is fundamental to the filing and recordation of a *lis pendens* that the action involve some legal interest in the challenged real property." *In re Bradshaw*, 315 B.R. 875, 888 (Bankr. D. Nev. 2004). *Cf. BGJ Associates v. Superior Court*, 89 Cal. Rptr. 2d 693, 703 (Ct. App. 1999) (stating that "an action for money *only*, even if it relates in some way to specific real property, will not support a lis pendens"). Therefore, under Nevada law, the filing of a notice of pendency is limited to actions involving "the foreclosure of a mortgage upon real property, or affecting the title or possession of real property." NRS 14.010(1); NRS 14.015(2)(a); *see Thomas v. Nevans*, 67 Nev. 122, 130, 215 P.2d 244, 247-48 (1950) (providing that "[t]he doctrine of constructive notice resulting from the filing with the county recorder of a notice of *lis pendens* applies . . . only to actions affecting real property").

The underlying complaint is not of the type envisioned under NRS 14.010(1) and NRS 14.015(2)(a) because it does not directly involve real property. Instead, Weddell seeks enforcement of an option to purchase the membership interest in the geothermal company, and even though the geothermal company apparently owned real property, membership interest is personal property. *See* NRS 86.351(1) (providing that the interest of each member in an LLC is personal property). Accordingly, the doctrine of lis pendens does not apply, and the district court did not abuse its discretion in canceling the notice of lis pendens. *See Meadow Springs, LLC v. IH Riverdale, LLC*, 690 S.E.2d 842, 845-46 (Ga. 2010).[10]

_____

[10]The parties' briefs suggest that the real property has been sold. Presuming that the real property associated with the geothermal company has since

*Ownership of H2O*

Next, we must consider the district court's decision on the merits, including whether substantial evidence supports its finding that Weddell has never acquired an ownership interest in the stock of H2O. According to Weddell, Stewart promised him $2.5 million in compensation for his successful debt negotiation in 2001. Stewart denies that he made such a promise, which was neither memorialized on paper nor witnessed by a third person. A few years later, Stewart gave Weddell $2.5 million, which Weddell then used to purchase 10,000 shares of H2O stock. Both Stewart and Weddell now claim the shares. The district court held that Weddell had never acquired an interest in the stock of H2O and was merely acting as an agent on behalf of Stewart, in part because Stewart was the source of virtually all monies and assets transferred into H2O after Weddell purchased the shares.

Weddell contends that substantial evidence does not support the district court's conclusion that he never obtained ownership interest in H2O. The record demonstrates otherwise. Regardless of whether Weddell ever owned the shares, the record clearly establishes that in May 2004, Weddell assigned his purported H2O shares to another company, White Paper, LLC, which was owned by Stewart, and later validly transferred any and all interest that he had in those shares to Stewart in June 2007. NRS 104.8301 (governing delivery of shares to a third person on behalf of the purchaser). Accordingly, we conclude that Weddell's arguments concerning fraud, estoppel, and waiver are irrelevant or lack merit, *see J.A. Jones Constr. v. Lehrer McGovern Bovis*, 120 Nev. 277, 291, 89 P.3d 1009, 1018 (2004) (declaring that " '[f]raud is never presumed; it must be clearly and satisfactorily proved' " (alteration in original) (quoting *Havas v. Alger*, 85 Nev. 627, 631, 461 P.2d 857, 860 (1969))), and there exists substantial evidence supporting the district court's conclusion that Weddell does not enjoy any ownership interest in H2O stock.

## CONCLUSION

Pursuant to NRS 86.401, a judgment creditor may obtain the rights of an assignee of the member's interest, receiving only a share of the economic interests in a limited-liability company, including profits, losses, and distributions of assets. Thus, the charging order does not entitle the creditor to Weddell's managerial

---

been sold, this issue would be deemed moot. *Lathrop v. Sakatani*, 141 P.3d 480, 486 (Haw. 2006) (providing that "the sale of the property prevents the appellate court from granting any effective relief" (citing *Chaney v. Community Development Agency*, 641 N.W.2d 328, 335 (Minn. Ct. App. 2002))).

rights in Granite. Due to the district court's misinterpretation of NRS 86.401, we reverse the district court's judgment in part and remand this matter to the district court for further proceedings consistent with this opinion.

With regard to the other issues on appeal, the district court properly rendered its legal conclusions and substantial evidence supports the district court's findings. For the foregoing reasons, we affirm the district court's judgment in all other aspects.[11]

SAITTA, C.J., and GIBBONS, J., concur.

---

[11]Weddell requests that he be awarded legal fees and costs and that the award of attorney fees in Stewart's favor be reversed. Because Weddell fails to provide this court with any cogent argument or persuasive legal authority in support of this allegation, this argument lacks merit. *See Smith v. Timm*, 96 Nev. 197, 201, 606 P.2d 530, 532 (1980) (stating that the court was unable to find error because the appellant had failed to provide adequate legal authority). Additionally, this court has already dismissed Weddell's appeal concerning the district court's award of attorney fees. *See Weddell v. Stewart*, Docket No. 55981 (Order Dismissing Appeal and Referring Counsel to State Bar, November 12, 2010).