Jeffrey P. Hopkins, United States Bankruptcy Judge
This matter is back before the bankruptcy court after nearly two years of protracted litigation in state court. The present case falls between the interstices of state and federal court jurisdiction. This occasionally happens when, as here, an order by a bankruptcy court is entered which modifies, annuls, and outright terminates the automatic stay under 11 U.S.C. § 362(d). As in this case, stay relief orders are very often entered so that a state court can liquidate causes of action by converting them into liability, or in bankruptcy parlance, debt, that later can be resolved in federal court through either an adversary proceeding or contested matter on an objection to a proof of claim.[1] 11 U.S.C. §§ 501 - 502 ; see Rules 3001-3007; 7001-87 and 9014.
Rather than return to the bankruptcy court for clarification of the order lifting the stay as they should, the parties instead have used the automatic stay as a cudgel to defend or pursue causes of action and counterclaims in the state court litigation - all the while contending that the other side has run afoul of the stay relief order for which contempt sanctions ought to be leveled.[2] As noted, after nearly two years of *590 back and forth and constant bickering during discovery and in court proceedings between the attorneys, the parties were finally ordered by the state court to return to the bankruptcy court for a determination on whether the automatic stay bars continuation of certain causes of action. (Doc. 96, Ex. 62).
Before the Court is the Motion to Enforce the Automatic Stay and for Sanctions and Attorneys Fees (the "Motion") (Doc. 86) filed by the Debtor Terry R. Johnson (the "Debtor") against Jeannette Crain and Joyce Chiles (the "Creditors"), who are plaintiffs in the state court litigation and also creditors of the bankruptcy estate. See 11 U.S.C. § 362 (k)(1). In 2016, the Creditors brought suit in state court seeking to dissociate the Debtor under Ohio's version of the Revised Uniform Partnership Act, and to recover monetary damages against him and his brother in a civil action. In the original complaint the Creditors asserted that the Debtor had engaged in fraud and other misconduct governed by state law while serving in dual capacities as managing partner of the E.T. Building Partnership ("the Partnership") and president for Enterprise Travel, Inc. ("Enterprise Travel"). The Partnership and Enterprise Travel were separate but related entities which at one point had been co-owned by the parties embroiled in this dispute.
In essence, this Court is being asked to determine the scope of its previous order terminating the automatic stay (Doc. 59)(the "Order for Relief"). The Debtor accuses the Creditors and their attorneys of committing some 59 violations of the automatic stay in state court. Much of the confusion stems from the failure by the attorneys for both sides to develop an appropriate record at the initial hearing prior to the Court entering the Order for Relief.[3] Because the original state court complaint was not presented, this Court did not have the opportunity to review it or any of the other relevant evidence at the first hearing. The Court has now had the opportunity to review the original state court complaint that was filed on January 26, 2016 and the other evidence surrounding it.
For the reasons that follow, the Court concludes that the Motion currently before it seeking enforcement of the automatic stay, recovery of attorneys fees and other monetary relief is not well taken, and is hereby DENIED . Moreover, the Court determines that relief from the automatic stay is granted as to all causes of action contained in the original and amended state court complaints without regard for whether the alleged debt is owed to the Partnership or to Enterprise Travel.[4]
*591 To be clear, the automatic stay in this proceeding has already been modified, annulled, and terminated. (Doc. 59). Because the record had been inadequately developed at the initial hearing on this matter two years ago, the bankruptcy court's previous Order for Relief may not have been a paragon of clarity or offered much guidance to the state court. Nevertheless, the Court concluded in the Order for Relief that the state court is permitted to fully adjudicate and reduce to judgment all claims related to "how the partnership proceeds from the sale of the real estate should be distributed pursuant to the mortgage , the E.T. Building Partnership Agreement and Ohio Partnership Act ," as the Creditors had requested. (Emphasis added). (Doc. 59). In other words, under the Order for Relief, the parties were free to obtain discovery regarding any non privileged matter relevant to either of the parties' claims or defenses: Similarly, the parties were permitted to continue prosecution of the state court litigation, with reference to the comprehensive remedies available under the Ohio Revised Partnership Act, should that court find the Debtor liable under that statute.
A. No Stay Violation was Committed in Continuation of the State Court Litigation to Dissociate the Debtor, Wind Up and Dissolve the Partnership.
The attorneys for the Debtor make much of the fact that the bankruptcy court's prior order terminating the stay directed the following: "The Motion for Relief from Stay, seeking to have the state court wind up the ET Building Partnership and rule on the proper distribution of the proceeds from the sale of the Partnership's real estate, among other items which may be adjudicated under Ohio Rev. Code § 1776 is GRANTED ." (Doc. 59).
The Debtor's counsel argues strenuously that the Creditors violated the automatic stay by pursuing collection on a claim that arose before the commencement of the bankruptcy case in contravention of 11 U.S.C. § 362(a)(1). As the argument goes, the quoted language from the order somehow limits the Creditors' ability to obtain *592 discovery regarding the Debtor's alleged misconduct while serving as president of Enterprise Travel. The Debtor's counsel contends that Enterprise Travel is a separate entity from the Partnership, and thus cannot be part of the Partnership wind up proceedings, and any underlying causes of action or claims for relief that the Creditors may be attempting to pursue against the Debtor for those activities are barred.
In sum, counsel would have the bankruptcy and state courts believe that all claims tied to the Debtor's alleged wrongful conduct associated with Enterprise Travel remain subject to the automatic stay. According to the Debtor's counsel, the Creditors violated the stay by continuing the portion of the litigation in state court which seeks recovery against the Debtor for his alleged misconduct while head of Enterprise Travel and that these multiple stay violations warrant a contempt citation and an order requiring payment of the Debtor's attorneys fees and punitive damages. See 11 U.S.C. § 362(k).
The Debtor's attorneys' reliance on the quoted portion of the bankruptcy court's prior Order for Relief for the proposition that the automatic stay limits the Creditors' ability to inquire into and to seek a judgment against the Debtor based on his alleged misconduct at Enterprise Travel is misplaced. As will be explained in Part B below, relief from the automatic stay is granted as to the state-law, fraud-based claims of Enterprise Travel, and therefore all information and allegations related to such matters are directly relevant to their causes of action against the Debtor.
Even under the Debtor's counsel's strained interpretation of the previous Order for Relief, this Court fails to find any violation of the automatic stay. To understand why the automatic stay was not violated and why the bankruptcy court will not, in this case, enforce the stay in the manner sought by the Debtor's counsel, the Court must delve once more into Ohio's version of the Revised Uniform Partnership Act. During oral argument, Counsel for the Debtor argued assiduously that Ohio's version of the Revised Uniform Partnership Act does not prevail over the written terms in the parties' Partnership Agreement (Doc. 96, Ex. 1). That contention, however, is only partly accurate.
Paragraph 1.1 of the parties' Partnership Agreement states that "the partners constitute a General Partnership formed pursuant to the Uniform Partnership Act of the State of Ohio ." (Emphasis added)(Doc. 96, Ex. 1). Moreover, the Ohio law on this subject, Ohio Rev. Code § 1776.03, in relevant part, further provides:
(A) Except as otherwise provided in division (B) of this section , the partnership agreement governs relations among the partners and between the partners and the partnership. To the extent the partnership agreement does not otherwise provide, this chapter governs relations among the partners and between the partners and the partnership.
(B) The partnership agreement may not do any of the following:
...
(3) Eliminate the duty of loyalty under division (B) of section 1776.44 of the Revised Code or division (B)(3) of section 1776.53 of the Revised Code...
(4) Unreasonably reduce the duty of care under division (C) of section 1776.44 of the Revised Code or division (B)(3) of section 1776.53 of the Revised Code...
(5) Eliminate the obligation of good faith and fair dealing under division (D) of section 1776.44 of the Revised Code...
*593 (6) Vary the power to dissociate as a partner under division (A) of section 1776.52 of the Revised Code except to require the notice under division (A) of section 1776.51 of the Revised Code to be in writing ...
(7) Vary the right of a tribunal to expel a partner in the events specified in division (E) of section 1776.51 of the Revised Code.
* * *
Thus, under Ohio law, any partner in a partnership formed in this state is mandated to adhere to the elevated standards of conduct set forth in the foregoing statute. In other words, all partners in an Ohio partnership are required to observe and maintain the duty of loyalty to the partnership and the other partners, the duty of care in the conduct of the partnership business, and all partners must exercise any rights that they possess consistent with the obligation of good faith and fair dealing, irregardless of any contrary language that may be contained in any written partnership agreement. See Ohio Rev. Code § 1776.44(B)(C) and (D).[5] The established heightened standards of conduct for partners set forth above are unalterable, and as noted, apply to all partnerships created in this state. See Ohio Rev. Code §§ 1776.03(A) and Ohio Rev. Code § 1776.03(B)(6), (7) and (8).
Here, despite the presence of an arbitration clause contained in the written Partnership Agreement, litigation seeking to dissociate the Debtor has been commenced in state court.[6] The decision to allow the current litigation to proceed rather than refer the matter for arbitration, of course, was well within the sound discretion of the state court to determine; the bankruptcy court will not arrogate itself to substitute its judgment.
In an action filed in state court to dissociate a partner who is alleged to have violated the duty of care or loyalty, or of good faith and fair dealing under Ohio Rev. Code § 1776.44(B)(C) and (D), the partnership or partners pursuing that relief have many arrows in the quiver from which to choose. For example, Ohio Rev. Code § 1776.45, in relevant part, provides:
(A) A partnership may maintain an action against a partner for a breach of the partnership agreement or for the violation of a duty to the partnership, causing harm to the partnership .
*594 (B) A partner may maintain an action against the partnership or another partner for legal or equitable relief ... to enforce any of the following:
...
(2) The partner's rights under this chapter, including ...
(a) The partner's rights under ... 1776.44 of the Revised Code ;
...
(c) The partner's right to compel a dissolution and winding up of the partnership business or enforcement of any other right under sections 1776.61 to 1776.67 ...
(3) The rights and otherwise protect the interests of the partner, including rights and interests arising independently of the partnership relationship .
* * *
Given the breadth of the causes of action available to the Creditors in the state court litigation under the Ohio Revised Uniform Partnership Act, discovery regarding any non privileged matter relevant to the parties' claims and defenses must necessarily be very broad. The Creditors in the state court litigation are seeking to dissociate the Debtor, wind up and dissolve the Partnership premised upon a host of misconduct he is alleged to have committed as the managing partner of the Partnership and as president of Enterprise Travel- a separate but closely related entity with overlapping ownership. Indeed, Paragraph 12.1 of the Partnership Agreement clearly demonstrates the symbiotic relationship that, at one time, existed between the two companies. It states that "In the event any of the partners, but not all of the partners, cease to be a shareholder of ENTERPRISE TRAVEL, INC., such partner shall be obligated to offer for sale to the partnership, and the partnership shall be obligated to purchase, his or her entire interest in the partnership." (Doc. 96, Ex. 1).
Although the Partnership and Enterprise Travel had been formed as separate entities at separate times under Ohio law, the reality of how the businesses operated seems to paint a far different picture. By all appearances the businesses were fully integrated and the Debtor managed them as one single entity without regard to the separate corporate identity for each business. The Creditors contend that funds generated from Enterprise Travel earmarked for payment to the Partnership or to cover the legitimate expenses of both businesses were instead used for personal expenses and other unlawful and fraudulent purposes by Debtor without the knowledge or consent of his partners.
Indeed, the Debtor is alleged to have wilfully and persistently committed wrongful acts which constituted material breaches of the Partnership Agreement and the duty of care owed to the Partnership and the other partners under Ohio Rev. Code § 1776.44. Under the circumstances, any alleged wrongful conduct that the Debtor, as partner, may have engaged in while serving in dual roles as manager of both entities leads one logically to the conclusion that the facts and information sought in discovery about the operation of both businesses are relevant in the context of the violations asserted under the Ohio Revised Partnership Act in the state court litigation.
The comprehensive provisions of the Ohio Revised Partnership Act give the state court broad authority to enter a judgment that includes legal and equitable relief based upon all evidence tied to the alleged wrongful conduct of a partner. To hold that the automatic stay now allows the Debtor to escape giving an account and to hide behind the formalities of the separateness *595 of the two businesses, when it is alleged that he himself did not observe those same formalities historically while syphoning funds from them, does not serve the ends of justice. We see no principled reason why the bankruptcy court should tie the hands of the state court, by applying the automatic stay in such a restrictive manner so as to prevent that court from hearing all the evidence that can potentially be used in the Partnership dissociation, wind up and an ultimate dissolution.
If the state court finds cause to dissociate the Debtor, rightfully-or in this case, wrongfully, and orders the wind up and dissolution of the Partnership, the judge is given broad statutory and equitable authority to fashion an appropriate remedy and enter judgment on the same in favor of the aggrieved partners or partnership. See , e.g. , Ohio Rev. Code § 1776.51(E) (expulsion); Ohio Rev. Code § 1776.52(A) (dissociation); Ohio Rev. Code § 1776.61(D), (E) and (F) (wind up the partnership business); and, in severe cases, Ohio Rev. Code § 1776.50 (imposition of a charging order)[7] ; See, also, In re Foos , 405 B.R. 604, 609 (Bankr. N.D. Ohio 2009) (a debtor may be subject to a charging order diverting the stream of profits that otherwise would have flowed to the debtor from the partnership).
Once the state court has adjudicated the various claims, counterclaims[8] , and defenses and determined the amount of debt that the Debtor owes to the Creditors, if any, the bankruptcy court will then decide whether those debts or "claims" should be allowed and payable from the bankruptcy estate under the applicable provisions of the Bankruptcy Code.[9] See *596 11 U.S.C. § 101(5) ("The term 'claim' means a right to payment, whether or not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, disputed, undisputed, secured, or unsecured ..."; 11 U.S.C. § 502 (a timely filed proof of claim is allowed unless an objection is filed); Rule 3002 (to receive a distribution in a Chapter 13 case, a creditor must file a timely proof of claim); Rule 3007 (governs objections to claims); Rule 9014 (governs litigation of contested matters, while Rules 7001-87 govern procedures for objections to claims that become adversary proceedings because they are joined with demands for relief listed in Rule 7001).
Whether the debt or claim associated with the Debtor's alleged misconduct at Enterprise Travel is deemed discharged or ultimately survives bankruptcy is an entirely separate matter. Given that the adversary proceeding attached to that potential debt has already been dismissed, the likelihood of the potential debt receiving treatment as anything other than a general unsecured claim is remote, at the very best. In all probability, if the state court finds liability, the Enterprise Travel debt will ultimately become discharged under § 1328 if the Debtor makes all of the payments and otherwise fully complies with the terms of the confirmed Chapter 13 plan (Doc. 22).
B. The Stay is Terminated in Continuation of State Court Litigation Related to Enterprise Travel.
The attorneys for the Debtor also rely on the following language for the proposition that Enterprise Travel's state-law, fraud-based causes of action against the Debtor remain stayed: "This Court shall retain jurisdiction over the related adversary proceeding and the Court will enter an order setting a pre-trial and trial date at a later date. The Movants are DIRECTED to file with this Court a status report within thirty (30) days after the conclusion of the State Court winding up proceedings for the partnership." (Doc. 59).
At best, this is a strained reading of the Order for Relief. The Bankruptcy *597 Court specifically retained jurisdiction over the adversary proceeding and not the underlying causes of action.[10] Here, the Bankruptcy Court retained jurisdiction solely over the question of dischargeability of any debt that might arise from the Debtor's alleged fraudulent conduct while serving as president of Enterprise Travel (or, for that matter, as managing partner of the Partnership).[11] Relief was granted on all other state law claims that the Creditors asserted against the Debtor so that the state court could adjudicate and reduce those claims to judgment without distinction for whether the alleged debt was owed to the Partnership or Enterprise Travel. Debtor's counsel's continued assertion that the claims associated with Enterprise Travel's brought against the Debtor are "barred" because of the dismissal of the adversary proceeding is also misinformed. The dismissal of the adversary proceeding only precludes a determination by the Bankruptcy Court that the underlying debt is nondischargeable, vis-à-vis , whether it will survive the Debtor's discharge under § 1328, should he fulfill all the terms of his confirmed Chapter 13 plan. See 11 U.S.C. §§ 523(a) (2), (4) and (6), 523(c) and Rule 4007.
The state court litigation, however, was otherwise unaffected by the dismissal of the adversary case. Under the Order for Relief entered, that case was permitted to proceed to resolution, even on the fraud claims, so that a determination either by the judge or jury could be rendered with regard to whether potential liability, or a debt, arose from the Debtor's alleged misconduct while at the helm of the Partnership or Enterprise Travel. That the Creditors' attorneys, intentionally or negligently, allowed the adversary proceeding, which presented claims identical to those contained in the state court complaint they had lodged against the Debtor, to be dismissed because the attorneys perhaps mistakenly believed that the state court determination of those issues would be given preclusive effect in the bankruptcy court, is of no moment. See Grogan v. Garner , 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Suffice it say that the state court has jurisdiction independent of the bankruptcy court's exclusive dischargeability jurisdiction to decide the existence of liability predicted upon fraud which may, in certain instances, receive preclusive effect under the Full Faith and Credit Statute in bankruptcy court, but only when the § 523(a) action survives. See Bay Factors v. Calvert (In re Calvert) , 105 F.3d 315 (6th Cir. 1997).
Under the circumstances, no stay violations occurred and the Creditors were well within their rights to continue pursuing fraud claims against the Debtor related to the Partnership and Enterprise Travel in the state court litigation without running afoul of the automatic stay.
C. The Stay is Continued Regarding Enforcement or Set-Off of any Judgment as to Liability.
The automatic stay, however, shall remain in effect with regard to any attempts *598 by the Creditors to execute or collect upon any judgment that the state court may order pursuant to Ohio Rev. Code § 1776.01, et seq. , or the other causes of action asserted against the Debtor involving Enterprise Travel. 11 U.S.C. § 362(a)(1), (3), (6) and (7). More specifically, the automatic stay shall encompass any attempt by the Creditors to set-off any payments which otherwise would flow to the Debtor based upon a charging order that the state court might impose. 11 U.S.C. § 362(a)(7) ; Ohio Rev. Code § 1776.50. The potential payment to the Creditors that might arise from any liability, or a debt, predetermined to exist in the state court litigation will ultimately be resolved in the bankruptcy court claims allowance proceedings. See Rules 3007 and 9014. See , for example, In re Foos , 405 B.R. at 609 (a debtor in a partnership where the state court has imposed a charging order may still claim the exemptions under Ohio Rev. Code § 2329.66(A)(14) )[12] .
D. Conclusion.
Based on the intricate interplay between state and federal law and the totality of circumstances presented in this case, we find that the state court should and will be given first crack at liquidating all of the parties' state law causes of action, counterclaims and defenses.[13] The state court is the proper forum to hear and decide all matters predominated by unique state law issues, including the partnership dissociation, wind up, dissolution and alleged corporate fraud claims. This is especially true, here, given that the Debtor alone filed for bankruptcy relief, not the Partnership itself. As such, only the Debtor's property interests in the Partnership became property of the estate, not the Partnership's real property-or in this case, the proceeds from the sale of the Galbraith Road building currently being held in the attorneys' trust account. The Debtor's interest in the *599 Partnership, vis a vis , his remaining interests in a share of the distribution from the sale proceeds, if any, can only be administered in bankruptcy court after the Partnership wind up is complete. See In re Olszewski , 124 B.R. 743, 748 (Bankr. S.D. Ohio 1991).
Finally, given that the state court litigation is at an advanced stage and the potential exists that a jury trial may be demanded, that court unquestionably presents itself as the preferred tribunal for adjudication of the state law claims. If a debt arises after the state court's entry of final judgment on all the state law related claims and there are proceeds from the Galbraith Road building leftover from the dissolution of the Partnership (and not distributed to Creditor Crain on the mortgage), the bankruptcy court will then decide what treatment the Creditors' predetermined debt, or in the bankruptcy context, their proof of claim, will receive under the Debtor's confirmed Chapter 13 plan. (See Proof of Claim 3-1, filed by Enterprise Travel and Jeannette Crain and Joyce Childs, signifying "other names the creditors used with the debtor").
IT IS SO ORDERED .

In re Martin , 542 B.R. 199, 203 (6th Cir. BAP 2015)."[T]he bankruptcy court does not improperly abdicate its role by holding an adversary proceeding to determine the dischargeability of a potential debt in abeyance in order to allow completion of on-going state court litigation regarding the cause of action giving rise to the potential debt.")

See , for example, In re Wardrobe , 559 F.3d 932, 937 (9th Cir. 2009) ("A creditor could petition the bankruptcy court for relief that is broad enough to encompass the cause of action, [or] could seek an order from the bankruptcy court clarifying the relief from stay order[.]").

The Order for Relief noted, "both attorneys' efforts fell short of the mark ... the Court had to piece together, from the briefs, the admissions of the parties through statements of counsel, and the Partnership Agreement, the facts upon which to predicate its decision." (Doc. 59).

The original state court complaint included the following counts:
Count One-Misappropriation of Funds (Terry Johnson)
Count Two-Breach of Fiduciary Duty (Terry Johnson)
Count Three-Breach of Contract (Terry Johnson)
Count Four-Fraud (Terry Johnson)
Count Five-Negligent Misrepresentation (Terry Johnson)
Count Six-Conversion (Greg Johnson)
Count Seven-Punitive Damages
Count Eight-Dissociation of Partner Terry Johnson
The amended complaint adds one count for dissolution of the Partnership (Doc. 96, Exh. 12). When presented with a request to lift the automatic stay to commence or continue litigation in a non-bankruptcy forum, the bankruptcy court must weigh a variety of non-exclusive factors to determine "cause": "(1) judicial economy; (2) trial readiness; (3) the resolution of preliminary bankruptcy issues; (4) the creditor's chance of success on the merits; (5) the cost of the defense or other potential burden to the bankruptcy estate; and (6) the impact of litigation on other creditors." In re Mason , 514 B.R. 852 (Bankr. E.D. Ky. 2014). Several of the aforementioned factors militate towards terminating the stay in order to permit the state court litigation to proceed. They are the judicial economy and the trial readiness of the parties in the other proceeding, the presence of a third party, Greg Johnson, the Debtor's brother, over whom this Court has no jurisdiction, the expertise of the state court to decide the unique issues related to the Partnership dissociation, wind up and dissolution and the balance of harms - meaning the slight impact on the bankruptcy administration, the other creditors who have filed claims (numbering only two - American Express and Federal Home Loan Bank), that will occur should the litigation continue in the state court. Also see, In re New York Medical Group, P.C. , 265 B.R. 408, 413 (Bankr. S.D.N.Y. 2001) ("The state court is the only forum that can award complete relief to all parties ... accordingly, stay relief will promote judicial economy."); In re Marvin Johnson's Auto Service, Inc. , 192 B.R. 1008, 1017-1018 (Bankr. N.D. Ala. 1996) (In a case involving the bankruptcy of debtor business and the president who were both being sued in state court for fraud, the bankruptcy court stated: "[The] facts weigh in favor of granting relief from the stay since the state court should be more familiar and more experienced with state law issues than the bankruptcy court and a determination of the issues involved in the litigation will not require the expertise of a bankruptcy judge.").

Ohio Rev. Code § 1776.44 provides as follows:
(B) A partner's duty of loyalty to the partnership and the other partners is limited to the following:
(1) To account to the partnership and hold as trustee for it any property, profit , or benefit derived by the partner in the conduct and winding up of the partnership business or derived from a use by the partnership property , including the appropriation of a partnership opportunity;
(2) To refrain from dealing with the partnership in the conduct or winding up of the partnership business as or on behalf of a party having an interest adverse to the partnership:
(3) To refrain from competing with the partnership in the conduct of the partnership business before the dissolution of the partnership.
(C) A partner's duty of care to the partnership and the other partners in the conduct ... of the partnership business ... intentional misconduct , or a knowing violation of law .
(D) A partner shall discharge duties to the partnership ... and shall exercise any rights consistent with the obligation of good faith and fair dealing .

The parties' written Partnership Agreement, at Paragraph 13.1, contains an arbitration clause which reads as follows: "All claims, disputes and other matters and questions arising out of or relating to this Agreement or the breach thereof shall be decided by arbitration by a single arbitrator mutually selected by the partners."

A charging order is "a remedy by which a judgment creditor of a [partner] can seek satisfaction by petitioning a court to charge the [partner's] interest with the amount of the judgment." Weddell v. H2O, Inc. , 128 Nev. 94, 271 P.3d 743, 749 (2012). While Weddell v. H2O is a case involving a LLC, the rule regarding charging orders applies with equal force in the context of partnerships.

As acknowledged in this Court's prior Order for Relief, Creditor, Crain's mortgage which was authorized by the partners at a meeting of the Partnership that took place on April 27, 2016 is at the crux of parties' ongoing dispute. If deemed valid in the dissociation, wind up and dissolution proceedings in state court, the proceeds from the sale of the Galbraith Road building, which is unquestionably Partnership property, may potentially leave nothing for the bankruptcy estate to administer after all the Partnership debts have been finally paid. See Ohio Rev. Code § 1776.61 -67. In its earlier order terminating and annulling the automatic stay, this Court did not finally decide whether the Crain mortgage was valid or not. We were only asked in the prior motion to determine whether the Creditor's actions taken as partners, at the April 27, 2016, meeting on behalf of the Partnership, violated the automatic stay. We held that the April 27 meeting did not violate the automatic stay under the Court's annulment authority, pursuant to § 362(d). (Doc. 59). The law is well established that joint eligibility of the Debtor and the Partnership is untenable: The Debtor cannot "[seek] to gain the benefits of the a partnership liquidation without the necessity of either filing a bankruptcy petition on behalf of the partnership or going [through] a state partnership winding up procedure." In re Olszewski , 124 B.R. 743, 748 (Bankr. S.D. Ohio 1991). Thus, the state court, not the bankruptcy court, ultimately must decide the validity or invalidity of the partner/creditor Crain's mortgage, as the case may be, and whether that debt should be repaid by the Partnership in the wind up and dissolution proceedings under that court's comprehensive, legal and equitable jurisdiction to determine such matters, pursuant to Ohio Rev. Code § 1776.01, et seq .

This Court could have estimated the Creditors' unliquidated claim, pursuant to 11 U.S.C. § 502(c). However, we decline to do so because the liquidation of the claim in state court will not "unduly delay the administration of the case." See In re North American Health Care, Inc. , 544 B.R. 684, 689 (Bankr. C.D. Cal. 2016) ("Because estimation is a second-best method, the Court concludes that the scope of unliquidated claim estimation in this case should be confined to the extent necessary to accomplish the overarching goal of avoiding undue delay in this case's administration and not expanded beyond that point.") Many of the factors listed in footnote 9 of the Order for Relief (Doc. 59) regarding this Court's decision to abstain, also support the decision to forego estimation in lieu of liquidation of the claim in state court. Specifically, this Court finds that timing is not critical-the chapter 13 plan has already been confirmed and state court litigation has already commenced. Further, in estimating the claims, this Court would be required to apply unique state law and hold a full-blown evidentiary hearing. See In re Federal-Mogul Global, Inc . 330 B.R. 133, 155 (D. Del. 2005) ("The principal consideration must be an accommodation to the underlying purposes of the Code. In accomplishing this task, the estimating court is bound by the legal rules which may govern the ultimate value of the claim. For example, when the claim is based on an alleged breach of contract, the court must estimate its worth in accordance with accepted contract law. It is, after all, a general principle in bankruptcy law that, for bankruptcy purposes, state law governs the validity and amount of a claim.") (citing Raleigh v. Ill. Dept. of Revenue , 530 U.S. 15, 20, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000) ); In re Sneijder , 407 B.R. 46, 56 (Bankr. S.D.N.Y. 2009) ("An estimation hearing is required if waiting for liquidation would unduly delay administration of the case.") See also In re Dow Corning Corp. , 211 B.R. 545 (Bankr. E.D. Mich. 1997) (Finding no cause to estimate personal injury tort claims because: substantial time delays could result from estimation, perceived benefit to debtor or creditors was questionable, and claimants could suffer abrogation of their right to jury trial.); In re VidAngel, Inc. , 593 B.R. 340, 350 (Bankr. D. Utah 2018) (denying estimation because "the [claimants] have a constitutional right to a jury trial before an Article III tribunal. This right to a jury trial for copyright damages cannot be supplanted by a claim estimation under § 502(c).")

This is not a controversial provision. Bankruptcy courts have exclusive jurisdiction to determine dischargeability issues. See In re Martin , 542 B.R. 199, 203 (6th Cir. BAP 2015) ; see also Fed. R. Bankr. P. 4007, Advisory Committee Notes ("The bankruptcy court has exclusive jurisdiction to determine dischargeability of [11 U.S.C. § 523(c) ] debts.").

"Although bankruptcy courts have exclusive jurisdiction to determine dischargeability issues, this 'does not require the bankruptcy court to redetermine all the underlying facts' of the case if they were previously determined in an earlier lawsuit." In re Martin , at 203 (quoting Spilman v. Harley , 656 F.2d 224, 227 (6th Cir. 1981) ).

Ohio Rev. Code § 2329.66 provides in relevant part:
(A) Every person who is domiciled in this state may hold property exempt from execution, garnishment, attachment, or sale to satisfy a judgment or order, as follows:
...
(14) The person's right in specific partnership property, as exempted by the person's rights in a partnership pursuant to section 1776.50 of the Revised Code, except as otherwise set forth in section 1776.50 of the Revised Code.

As noted in the bankruptcy court's prior order, the partnership is not terminated immediately upon dissolution. See Ohio Rev. Code § 1776.63. The partnership continues to operate until completion of the wind up of its affairs. Id. The partners participating in the wind up must continue to observe and adhere to the statutory duty of care owed to the partnership and other partners. See Ohio Rev. Code § 1776.63. 1776.53(B)(3). Here, by agreement of the parties, the Galbraith Road real estate owned by the Partnership has already been sold. Currently, the proceeds from the sale are being held in trust pending the outcome of the dissolution and bankruptcy court proceedings. The state court will need to establish the debt, if any, the Debtor owes to the Creditors, by charging order or otherwise, under the Ohio Rev. Code § 1776.50, along with the other applicable provisions of the statute. The wind up involves applying the partnership's assets towards payment its obligations, first towards debts owed to the partnership's outside creditors and then towards loans, capital contributions, and profits owed to the partners, in that order. Ohio Rev. Code §§ 1776.61 to 1776.67. Until the wind up is complete, the partnership property remains an asset of the partnership. Id. The Debtor's economic interest in the partnership does not become property of the bankruptcy estate until all the partnership's creditors have been paid, including the obligations owed to any partners who are creditors and the right each partner may have to any distributions from the partnership. Ohio Rev. Code § 1776.67. See In re Doddy, 164 B.R. 276, 278 (Bankr. S.D. Ohio 1994) ; DH-KL Corp. v. Corbin , 1999 WL 739574 (Ohio App., Sept. 23, 1999) (both applying an earlier version of the Ohio Partnership Act).