**NOT FOR PUBLICATION**

## UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

RJRN HOLDINGS, LLC,

        Plaintiff-counter-
defendant-Appellee,

  v.

CARRINGTON MORTGAGE
SERVICES, LLC,

        Defendant-Appellant,

BAC HOME LOANS SERVICING, LP,

        Defendant-counter-claimant-
Appellant,

REX ARCHAMBAULT,

        Counter-defendant-Appellee,

  v.

RH KIDS, LLC,

        Third-party-plaintiff-
Appellee,

No. 17-15932

D.C. No. 2:15-cv-01257-JCM-NJK

MEMORANDUM[*]

---

    [*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

v.

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.,

Third-party-defendant-
Appellant.

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Submitted January 23, 2020[**]
Submission vacated January 31, 2020
Resubmitted October 20, 2020
San Francisco, California

Before: W. FLETCHER and R. NELSON, Circuit Judges, and SESSIONS,[***]
District Judge.

This case is one of many stemming from Nevada's homeowners' association foreclosure statute, Nev. Rev. Stat. § 116.3116. We affirm the district court's decision in favor of appellee RH Kids.

On December 23, 2008, Pulte Mortgage, LLC (the original lender – "OL") issued a loan to Rhonda Davis to purchase property. The loan was secured by a

---

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***] The Honorable William K. Sessions III, United States District Judge for the District of Vermont, sitting by designation.

deed of trust, recorded on January 6, 2009. On August 6, 2010, OL assigned its beneficial interest in the deed of trust to BAC Home Loans Servicing, LP ("BAC"). The assignment was recorded on August 11, 2010.

Pursuant to Nev. Rev. Stat. § 116.3116, the Hacienda North Homeowners' Association ("HOA") claimed a superpriority lien on Davis's property for assessments, based on the property's Covenants, Conditions, and Restrictions. On April 12, 2011, Absolute Collection Services, LLC ("ACS"), acting on behalf of HOA, recorded a notice of delinquent assessment lien indicating that Davis owed $1,074.00. On July 18, 2011, ACS recorded a notice of default and election to sell, which indicated that Davis owed $2,009.41. Then, on November 10, 2011, ACS recorded a notice of trustee's sale, which indicated Davis owed $3,530.72.

On January 30, 2012, BAC, as the assignee of the beneficial interest in the deed of trust on Davis's property, sent a letter via counsel to ACS "requesting and offering to pay the superpriority amount 'upon presentation of adequate proof.'" On February 17, 2012, ACS responded, in relevant part,

> [I]n conversations past, you had stated your clients [sic] position of paying for 9 months of assessments . . . all occurring ***before*** foreclosure by your client.
>
> I am making you aware that it is our view that without the action of foreclosure, a 9 month Statement of Account is not valid. At this time, I respectfully request that you submit the Trustees Deed Upon Sale

showing your client's possession of the property and the date that it occurred. At that time, we will provide a 9 month super priority lien Statement of Account.

. . . We recognize your client's position as the first mortgage company as the senior lien holder. Should you provide us with a recorded Notice of Default or Notice of Sale, we will hold our action so your client may proceed.

(Emphasis in original). BAC took no further action.

On April 17, 2012, HOA conducted a foreclosure sale, at which Rex Archambault bought the property for $5,000, approximately eight percent of the property's fair market value. In February 2014, Archambault quitclaimed the property to RJRN Holdings, LLC ("RJRN"), which quitclaimed the property to RH Kids, LLC ("RHK") in December 2015.

On June 16, 2015, RJRN filed a complaint (prior to quitclaiming the property to RHK) against Davis, HOA, and the present Defendants. RHK, after receiving the property, filed a third-party complaint against the present Defendants on April 28, 2016, "alleging two causes of action: (1) quiet title; and (2) injunctive relief." The parties filed cross-motions for summary judgment. The district court denied Defendants' motion for summary judgment and granted RHK's motion.

We review de novo cross-motions for summary judgment. *Pintos v. Pacific Creditors Ass'n*, 605 F.3d 665, 674 (9th Cir. 2010). "A plea to quiet title does not

4

require any particular elements, but each party must plead and prove his or her own claim to the property in question and a plaintiff's right to relief therefore depends on superiority of title." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (internal quotation marks and citations omitted).

Appellants argue (1) that their correspondence with ACS constituted valid tender; (2) alternatively, that ACS's response to BAC's offer constituted a rejection of tender, which would excuse formal tender; and (3) even if the court rejects the first and second arguments, that equity requires that we set aside the foreclosure sale.

We thought that the result of this case might be controlled by a Nevada Supreme Court decision, *Bank of Am., N.A. v. Thomas Jessup, LLC Series VII*, 435 P.3d 1217, 1218 (Nev. 2019) (*Jessup I*). After learning that the Nevada Supreme Court would be rehearing *Jessup I* en banc, we withdrew submission pending that Court's decision. After the Nevada Supreme Court issued its en banc decision, *Bank of America, N.A. v. Thomas Jessup, LLC Series VII*, 452 P.3d 255 (Nev. 2020) ( *Jessup II*), appellants filed a 28j letter informing us of the decision. Appellants filed a motion to lift the stay we had entered pending the decision in *Jessup II*, Dkt. No. 56, which we now grant. As it turns out, the Nevada Supreme Court's decision in *Jessup II* was unpublished and does not control the outcome in

5

this case.  Nev. R. App. P. 36(c)(2).

However, another intervening case does control the outcome.  In *7510 Perla Del Mar Avenue Trust v. Bank of America, N.A.*, 458 P.3d 348, 349 (Nev. 2020), the Supreme Court of Nevada evaluated correspondence that was identical in substance to the correspondence here.  The correspondence "requested that [the letter's recipient] identify the superpriority portion of the lien—i.e., the amount the Bank may rightfully pay to preserve its deed of trust—and offered to pay that sum upon proof of the same."  *Id.*  The Supreme Court of Nevada held that the correspondence did not constitute valid tender.  *Id.*  Based on *Perla del Mar*, we conclude that the district court was correct in the case before us in concluding that there was no valid tender.

If ACS had "a known policy of rejecting any payment for less than the full lien amount," BAC's "obligation to tender the superpriority portion of the lien" would have been excused.  *Id.* at 351.  BAC points only to the language of the correspondence to support its contention that ACS had such a policy.  BAC's contention, relying solely on the language of the letter, that ACS had a known policy of rejecting payment cannot survive summary judgment.  Finally, appellants argue "that equity required setting aside the foreclosure sale" even if tender was not excused.  The district court was correct in its rejection of that argument.

The other issues raised do not change our conclusion. The Nevada statute is not preempted by the Federal Housing Administration's mortgage insurance program. *Bank of Am. v. Arlington West Twilight Homeowners Assoc.*, 920 F.3d 620, 624 (9th Cir. 2019). And BAC's facial due process challenge fails because *Bourne Valley Court Tr. v. Wells Fargo Bank, NA*, 832 F.3d 1154 (9th Cir. 2016), no longer controls the analysis. *Arlington*, 920 F.3d at 623–24. Finally, because there was no valid tender, RHK provided sufficient evidence that it was a bona fide purchaser that provided value without knowledge or notice of an earlier interest. *See* Nev. Rev. Stat. § 111.180(1); *see also Bailey v. Butner*, 176 P.2d 226, 234 (Nev. 1947). Even assuming that RHK had a duty to inquire whether the superpriority amount was tendered, the fact of the foreclosure sale itself satisfied this duty.

**AFFIRMED.**